UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------------------------------x

TRUMP MARKS REAL ESTATE LLC,

                Plaintiff,

         v.

CAP CANA, S.A., RICARDO HAZOURY,
FERNANDO HAZOURY, ABRAHAM
HAZOURY, CATHERINE KURY HAZOURY,
GEORGE SPENCE, MICHEL RODRIGUEZ and
MICHELL VARGAS,

                Defendants.

------------------------------------------------------------x

Case No: 12-cv-06440-NRB

**ORAL ARGUMENT REQUESTED**

## MEMORANDUM OF LAW IN SUPPORT OF
## DEFENDANTS' MOTION TO DISMISS THE COMPLAINT

SIMPSON THACHER & BARTLETT LLP
425 Lexington Avenue
New York, New York 10017-3954
Telephone: (212) 455-2000
Facsimile: (212) 455-2502

*Attorneys for Defendants Cap Cana, S.A.,
Ricardo Hazoury, Fernando Hazoury, Abraham
Hazoury, Catherine Kury Hazoury, George
Spence, Michel Rodriguez and Michell Vargas*

**Table of Contents**

Page

Preliminary Statement ................................................................................ 1

Statement Of Facts .................................................................................... 2

    A.    Defendants Are Residents Of The Dominican Republic .......................................2

    B.    Trump Marks And Cap Cana Entered Into A License Agreement To Develop And Market Luxury Residential And Commercial Real Estate In The Dominican Republic .................................................................3

    C.    Trump Marks And Cap Cana Agreed To Arbitrate Audit And Fee Disputes ..........................................................................................4

    D.    Trump Marks Commenced This Litigation In Violation Of Its Express Agreement To Arbitrate Any Audit And Fee Disputes .........................5

    E.    Trump Marks Failed To Allege That This Court Has Personal Jurisdiction Over The Individual Defendants .........................................6

Argument ................................................................................................ 6

II.    This Court Should Dismiss The Complaint Because Trump Marks Agreed To Arbitrate Any Audit And Fee Disputes ....................................... 6

    A.    Trump Marks And Cap Cana Entered Into A Valid And Enforceable Agreement To Arbitrate Any Audit And Fee Disputes .........................7

    B.    Trump Marks' Claims Fall Within The Scope Of The Arbitration Agreement ...........................................................................9

    C.    Trump Marks' Claims Against The Individual Defendants Are Also Arbitrable ..........................................................................10

    D.    Dismissal Of A Complaint Is The Appropriate Remedy Where, As Here, The Claims Asserted In The Complaint Are Arbitrable .............11

III.    This Court Should Dismiss The Claims Against The Individual Defendants For Lack Of Personal Jurisdiction ......................................... 11

    A.    Trump Marks Has Failed To Establish That This Court Has Personal Jurisdiction Over The Individual Defendants Under New York's Long-Arm Statute ..........................................................................13

        1.    The Individual Defendants Are Not Subject To General Personal Jurisdiction ............................................................ 13

2.    The Individual Defendants Are Not Subject To Specific Personal Jurisdiction ............................................................................................... 16

B.    The Exercise Of Personal Jurisdiction Over The Individual Defendants Would Violate The Requirements Of Due Process .................................................19

IV.   Trump Marks' Remaining Claims Should Also Be Dismissed .......................................... 22

A.    Trump Marks Has Failed To State A Breach Of Contract Claim Against The Individual Defendants .........................................................................22

B.    Trump Marks Cannot State A Claim For The Breach Of The Covenant Of Good Faith And Fair Dealing ..............................................................................22

C.    Trump Marks Has Failed To Adequately Allege A Corporate Veil Piercing Claim ................................................................................................................23

D.    Trump Marks' Conclusory Allegations Are Insufficient To Warrant The Extraordinary Remedy Of The Appointment Of A Receiver .........................24

Conclusion ...................................................................................................................................... 25

# Table Of Authorities

## Cases

*Alghanim v. Alghanim*, 828 F. Supp. 2d 636 (S.D.N.Y. 2011) ....................................................... 9

*Altissima Ltd. v. One Niagara, LLC*, No. 08-cv-756-JTC, 2009 WL 1322319 (W.D.N.Y. May 8, 2009) ............................................................................................................... 25

*Armienti v. Brooks*, 767 N.Y.S.2d 2 (1st Dep't 2003) ................................................................. 25

*Asahi Metal Indus. Co., Ltd. v. Sup. Ct. of Cal., Solano Cty.*, 480 U.S. 102 (1987) .............. 20, 21

*Astra Oil Co. v. Rover Navigation, Ltd.*, 344 F.3d 276 (2d Cir. 2003) ........................................ 10

*Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007) ......................................................................... 2

*Berger v. Cantor Fitzgerald Sec.*, 967 F. Supp. 91 (S.D.N.Y.1997) ........................................... 11

*Berman v. Sugo LLC*, 580 F. Supp. 2d 191 (S.D.N.Y. 2008) ..................................................... 22

*Best Van Lines, Inc. v. Walker*, 490 F.3d 239 (2d Cir. 2007) .................................................... 12

*Black v. USA Travel Auth., Inc.*, No. 99-cv-11278, 2001 WL 761070 (S.D.N.Y. July 6, 2001) .......................................................................................................................... 15

C.P.L.R. § 302(a)(4) .................................................................................................................... 19

*Chambers v. Time Warner, Inc.*, 282 F.3d 147 (2d Cir. 2002) ...................................................... 3

*Choctaw Generation L.P. v. Am. Home Assurance Co.*, 271 F.3d 403 (2d Cir. 2001) ............... 10

*David L. Threlkeld & Co., Inc. v. Metallgesellschaft Ltd. (London)*, 923 F.2d 245 (2d Cir. 1991) ....................................................................................................................... 7, 9, 10

*DiStefano v. Carozzi N. Am., Inc.*, 286 F.3d 81 (2d Cir. 2001). ........................................... 11, 12

*Duration Mun. Fund, L.P. v. J.P. Morgan Sec. Inc.*, 908 N.Y.S.2d 684 (1st Dep't 2010) .......... 23

*E. Fish Co. v. S. Pac. Shipping Co., Ltd.*, 105 F. Supp. 2d 234 (S.D.N.Y. 2000) ....................... 11

*Hamerslough v. Hipple*, No. 10-cv-3056(NRB), 2010 WL 4537020 (S.D.N.Y. Nov. 4, 2010) ...................................................................................................................... 7, 11

*Harrison Realty Corp. v. Axon*, 744 N.Y.S.2d 23 (1st Dep't 2002) ............................................ 25

*Ipcon Collections LLC v. Costco Wholesale Corp.*, No. 7:10-cv-9012 (VB), 2011 WL 3806255 (S.D.N.Y. Aug. 24, 2011) ....................................................................................... 6

*Jain v. Sec. Indus. & Fin. Markets Ass'n*, No. 08 Civ. 6463(DAB), 2009 WL 3166684 (S.D.N.Y. Sept. 28, 2009) ................................................................................ 16

*Jazinini v. Nissan Motor Co.*, 148 F.3d 181 (2d Cir. 2000) ............................................. 13

*JLM Indus., Inc. v. Stolt-Nielsen SA*, 387 F.3d 163 (2d Cir. 2004) ............................... 9, 10

*Knight-McConnell v. Cummins*, No. 03-cv-5035(NRB), 2005 WL 1398590 (S.D.N.Y. June 13, 2005) ....................................................................................... 16, 17, 18, 19

*Landoll Res. v. Alexander & Alexander Serv.*, 918 F.2d 1039 (2d Cir. 1990) ................. 14

*Mahant v. Lehman Bros.*, No. 99-cv-4421 MBM, 2000 WL 1738399 (S.D.N.Y. Nov. 22, 2000) ......................................................................................................... 11

*McDonell Douglas Fin. Corp. v. Pennsylvania Power & Light Co.*, 858 F.2d 825 (2d Cir. 1988) ........................................................................................................... 8

*McMahan Sec. Co. v. Forum Capital Mkts. L.P.*, 35 F.3d 82 (2d Cir. 1994) ................ 6, 10

*Metro. Life Ins. Co. v. Robertson-Ceco Corp.*, 84 F.3d 560 (2d Cir. 1996) ............... 19, 21

*Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1 (1983) .................... 10

*Najib v. Arnold*, No. 03-cv-3010(CBM), 2005 WL 221429 (Jan. 31, 2005) ................... 11

*Nautilus Ins. Co. v. Adventure Outdoors, Inc.*, 247 F.R.D. 356 (E.D.N.Y. 2007) .......... 13

*Obex Sec., LLC v. Healthzone Ltd.*, No. 10-cv-6876(SAS), 2011 WL 710608 (S.D.N.Y. Feb. 28, 2011) ....................................................................................... 22

*Oldroyd v. Elmira Sav. Bank, FSB*, 134 F.3d 72 (2d Cir. 1998) ................................. 6, 10

*Perry v. N.Y. Law Sch.*, No. 03-cv-9221(GBH), 2004 WL 1698622 (S.D.N.Y. July 28, 2004) ............................................................................................................. 11

*Prima Paint Corp. v. Flood & Conklin Mfg. Co.*, 388 U.S. 395 (1967) ........................... 9

*Reiss v. Steigrod*, 866 F. Supp. 747 (S.D.N.Y. 1994) .................................................... 17

*RSM Prod. Corp. v. Fridman*, 643 F. Supp. 2d 382 (S.D.N.Y. 2009) ............................ 15

*Rubin v. Sona Int'l Corp.*, 457 F. Supp. 2d 191 (S.D.N.Y. 2006) ............................... 7, 11

*Ryan Beck & Co., Inc. v. Daly Holdings, Inc.*, No. 06-cv-5349 RCC, 2006 WL 3775964 (Dec. 19, 2006) ............................................................................................ 25

*S.A. Mineracoa da Tridade-Samitri v. Utah Int'l, Inc.*, 745 F.2d 190 (2d Cir. 1984) .... 6, 10

*Schultz v. Safra Nat. Bank of N.Y.*, 377 Fed. App'x 101 (2d Cir. 2010).................................... 14

*Siks for Justice v. Nath*, 850 F. Supp. 2d 435 (S.D.N.Y. 2012)...................................... 16

*Smith/Enron Cogeneration Ltd. v. Smith Cogeneration Int'l, Inc.*, 198 F.3d 88 (2d Cir. 1999)................................................................................................................ 10

*Spencer-Franklin v. Citigroup/Citibank N.A.*, No. 06-cv-3475(GBD)(GWG), 2007 WL 521295 (S.D.N.Y. Feb. 21, 2007) ....................................................................... 11

*Starr v. Firstmark Corp.*, No. 12-cv-4023 (SJF) (AKT), 2012 WL 4891622 (E.D.N.Y. Oct. 1, 2012).......................................................................................................... 9

*Tamam v. Fransabank Sal*, 677 F. Supp. 2d 720 (S.D.N.Y. 2010) ............................ 12

*Titan Pharm. & Nutrition, Inc. v. Medicine Shoppe Int'l, Inc.*, No. 05-cv-10580(SAS), 2006 WL 626051 (S.D.N.Y. Mar. 13, 2006) ......................................................... 11

*United States v. Funds Held in the Name or for the Benefit of Wetterer*, 210 F.3d 96 (2d Cir. 2000) ............................................................................................................... 23

*Whitaker v. Am. Telecasting, Inc.*, 261 F.3d 196 (2d Cir. 2001) ................................. 12

*Wiwa v. Royal Dutch Petroleum Co.*, 226 F.3d 88 (2d Cir. 2000) ............................... 13

## Other Authorities

9 U.S.C. § 2.............................................................................................................. 8

C.P.L.R. § 302(a)(1) .................................................................................................. 17

C.P.L.R. §§ 301......................................................................................................... 13

C.P.L.R. §§ 302......................................................................................................... 13

In accordance with this Court's October 11, 2012 Order, Defendants Cap Cana, S.A. ("Cap Cana"), Ricardo Hazoury, Fernando Hazoury, Abraham Hazoury, Catherine Kury Hazoury, George Spence, Michel Rodriguez, and Michell Vargas (collectively, "Individual Defendants") (together with Cap Cana, "Defendants") respectfully submit this memorandum of law in support of their motion to dismiss Plaintiff Trump Marks Real Estate LLC's ("Trump Marks") Complaint (the "Complaint").

## PRELIMINARY STATEMENT

This action arises out of a dispute under a license agreement for the development and marketing of a real estate project in the Dominican Republic, between Trump Marks and Cap Cana, a corporation incorporated in and doing business in the Dominican Republic.  Based on the purported results of an audit of Cap Cana's books and records in the Dominican Republic, Trump Marks asserts that Defendants owe Trump Marks approximately $5.8 million in licensing fees and accrued interest under the license agreement.

Trump Marks is precluded from pursuing this litigation in this Court because Trump Marks expressly agreed to arbitrate any disputes related to (i) any audit conducted by Trump Marks of Cap Cana's books and records, and (ii) any fees allegedly owed to Trump Marks under the license agreement.  This Court should dismiss this action and reject Trump Marks' attempt to avoid its contractual obligation to arbitrate this dispute.

Even if Trump Marks had not expressly agreed to arbitrate the issues raised in this action, Trump Marks' claims against the Individual Defendants would nonetheless be subject to dismissal for the additional reason that this Court lacks personal jurisdiction over these defendants.  The Individual Defendants, who are residents of the Dominican Republic and Mexico, are not parties to the license agreement and thus are not bound by its jurisdictional

provision.  Indeed, Trump Marks has not even asserted in its Complaint that this Court has personal jurisdiction over any of the Individual Defendants.  Nor has Trump Marks alleged any facts sufficient to satisfy its burden of making a prima facie showing that personal jurisdiction exists over the Individual Defendants and that the exercise of such jurisdiction would comport with the requirements of due process.  The dismissal of Trump Marks' claims against the Individual Defendants for lack of personal jurisdiction is supported by longstanding Supreme Court precedent holding that the unique and severe burdens imposed on a foreign defendant who is forced to defend himself in a foreign legal system strongly weigh against U.S. courts exercising jurisdiction over such defendants absent a clear showing that jurisdiction exists.

Finally, several of Trump Marks' claims should be dismissed for the independent reason that they fail to state a claim upon which relief can be granted.

## STATEMENT OF FACTS

### A.      Defendants Are Residents Of The Dominican Republic And Mexico

Defendant Cap Cana is a real estate development corporation organized under the laws of the Dominican Republic and has its principal place of business in Santo Domingo, Dominican Republic.[1]  Compl. ¶ 11.  The Individual Defendants are residents of the Dominican Republic and Mexico and are current or former principals and/or officers of Cap Cana.  *Id.* ¶¶ 13-18; R.

---

[1] For purposes of this motion to dismiss, Defendants assume the truthfulness of the allegations in the Complaint. *See Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555-56 (2007).  All citations using the following formant "Ex. __" are to exhibits accompanying the Declaration of Juan A. Arteaga, dated November 16, 2012.  All citations using the following format "Chupani Aff." are to the Affidavit of Dr. Manuel Berges Chupani, dated November 12, 2012.  All citations using the following format "R. Hazoury Decl." are to the Declaration of Ricardo Hazoury, dated November 16, 2012.  All citations using the following format "F. Hazoury Decl." are to the Declaration of Fernando Hazoury, dated November 16, 2012.  All citations using the following format "A. Hazoury Decl." are to the Declaration of Abraham Hazoury, dated November 16, 2012.  All citations using the following format "C. Hazoury Decl." are to the Declaration of Catherine Kury Hazoury, dated November 15, 2012.  All citations using the following format "Spence Decl." are to the Declaration of George Spence, dated November 16, 2012.  All citations using the following format "Rodriguez Decl." are to the Declaration of Michel Rodriguez, dated November 16, 2012.  All citations using the following format "Vargas Decl." are to the Declaration of Michell Vargas, dated November 16, 2012.

Hazoury Decl. ¶ 3; F. Hazoury Decl. ¶ 3; A. Hazoury Decl. ¶ 3; C. Hazoury Decl. ¶¶ 4-5; Spence

Decl. ¶¶ 3-4; Rodriguez Decl. ¶ 3; Vargas Decl. ¶ 3.

Plaintiff Trump Marks is a limited liability company organized under the laws of the

State of Delaware and has its principal place of business in New York, New York.  Compl. ¶ 10.

### B.    Trump Marks And Cap Cana Entered Into A License Agreement To Develop And Market Luxury Residential And Commercial Real Estate In The Dominican Republic

For a number of years, Cap Cana has been developing a luxury residential and

commercial real estate project near Punta Cana, Dominican Republic, which includes the

development of luxury residential properties, golf courses, a spa and fitness center and a

condominium hotel (the "Cap Cana Project").  *Id.* ¶ 20; Ex. A (License Agreement) at 1-2.[2]  In

connection with the Cap Cana Project, Cap Cana and Trump Marks entered into a license

agreement on or about February 16, 2007 (the "License Agreement").  Compl. ¶ 21.  Under the

License Agreement, Trump Marks agreed to license to Cap Cana the "Trump" name and

trademark for purposes of developing and marketing the Cap Cana Project.  Compl. ¶ 21; Ex. A

(License Agreement) at 1.  In return for these licenses, Cap Cana agreed to pay Trump Marks

certain licensing fees.  Compl. ¶ 22; Ex. A (License Agreement) at 25.

The License Agreement was entered into solely by Trump Marks and Cap Cana.  Ex. A

(License Agreement) at 1 ("THIS AGREEMENT . . . is made . . . between TRUMP MARKS

REAL ESTATE LLC . . . and CAP CANA, S.A. . . ."); *id.* (defining the "Parties" to the License

Agreement as Trump Marks and Cap Cana); *id.* at 58 (listing Cap Cana and Trump Marks as

---

[2] Because the Complaint references the license agreement entered into by Trump Marks and Cap Cana, this Court may consider this agreement when ruling on Defendants' instant motion to dismiss.  *See Chambers v. Time Warner, Inc.*, 282 F.3d 147, 153 & n.3 (2d Cir. 2002).

signatories to the License Agreement).  Thus, none of the Individual Defendants is a party to or bound personally by the License Agreement.[3]

### C.      Trump Marks And Cap Cana Agreed To Arbitrate Audit And Fee Disputes

Trump Marks and Cap Cana agreed, pursuant to the License Agreement, to arbitrate any disputes related to (i) any audit conducted by Trump Marks of Cap Cana's books and records in the Dominican Republic, and (ii) any fees alleged to be owed to Trump Marks under the License Agreement:

> Licensor or its designated representatives shall have the rights not to be exercised more than once (1) per year, on not less than five (5) days notice to Licensee, to audit Licensee's books and records in the Dominican Republic with respect to the determination of the License Fees and any and all other fees payable to Licensor hereunder . . . .
>
> In the event there shall arise a difference or dispute between Licensor and Licensee concerning any audit conducted by Licensor under this Agreement or the amount due to Licensor hereunder (each an "**Audit Dispute**"), either Licensor or Licensee may submit the Audit Dispute to arbitration in accordance with the Arbitration Procedures set forth in Section 18 hereof, except that the arbitrators shall all be licensed real estate brokers, proficient in Spanish, with at least ten (10) years full-time commercial brokerage experience with the selling and development of luxury properties (comparable to the Development Components contemplated to be developed pursuant to this Agreement) in the Dominican Republic or another comparable area of the Caribbean, whichever is most relevant in such arbitrator's experience given the nature of the Audit Dispute.

Ex. A (License Agreement) at 26 (Clause 4(c)).  Trump Marks and Cap Cana included additional arbitration provisions in the License Agreement which memorialize the rules and procedures that

---

[3] Unlike the Individual Defendants, certain Trump Marks officers agreed to be bound by certain provisions in the License Agreement.  Ex. A (License Agreement) at 58.

the parties agreed would govern the arbitration of any audit and fee disputes.[4]  *Id.* at 51 (Clause 18(a)-(e)).

### D.   Trump Marks Commenced This Litigation In Violation Of Its Express Agreement To Arbitrate Any Audit And Fee Disputes

In or around July 2009, Trump Marks conducted an audit of Cap Cana's books and records in the Dominican Republic for the period between February 16, 2007 and June 30, 2009. Compl. ¶ 41.  Based on the findings of this audit, Trump Marks informed Cap Cana that Trump Marks believed it was owed approximately $15 million in licensing fees and accrued interest under the License Agreement.  *Id.* ¶¶ 38, 41.  After Trump Marks advised Cap Cana of this dispute, Cap Cana paid a portion of the licensing fees and accrued interested claimed by Trump Marks.  *Id.* ¶ 43.

On August 23, 2012, Trump Marks commenced this litigation alleging that Defendants breached their duties under the License Agreement and engaged in a fraudulent scheme by failing to pay Trump Marks approximately $5.8 million in licensing fees and accrued interest. *Id.* ¶¶ 1-6.  Trump Marks commenced this litigation – which seeks the payment of allegedly outstanding licensing fees and accrued interest based upon Trump Marks' July 2009 audit – despite having expressly agreed to arbitrate any disputes related to (i) any audit conducted by Trump Marks of Cap Cana's books and records, and (ii) any fees allegedly owed to Trump Marks under the License Agreement.  Ex. A (License Agreement) at 26 (Clause 4(c)).

---

[4] Trump Marks and Cap Cana also agreed that any disputes that they had not agreed to arbitrate would be litigated in actions commenced in a "state court or federal court located in the County of New York in the State of New York." Ex. A (License Agreement) at 55 (Clause 22(a)).  Moreover, Trump Marks and Cap Cana agreed that New York law would govern the License Agreement, "both as to interpretation and enforcement."  *Id.*

### E.    Trump Marks Failed To Allege That This Court Has Personal Jurisdiction Over The Individual Defendants

Trump Marks alleges that this Court has personal jurisdiction over Cap Cana because "Cap Cana has expressly consented to this Court's jurisdiction pursuant to Section 22(a) of the License Agreement." Compl. ¶ 8.  Trump Marks, however, has failed to allege that this Court has personal jurisdiction over any of the Individual Defendants, who are not parties to the License Agreement and thus are not bound by the License Agreement's jurisdictional provision.

## ARGUMENT

## II.    THIS COURT SHOULD DISMISS THE COMPLAINT BECAUSE TRUMP MARKS AGREED TO ARBITRATE ANY AUDIT AND FEE DISPUTES

The Federal Arbitration Act ("FAA") "codif[ies] a strong national policy in favor of arbitration." *Ipcon Collections LLC v. Costco Wholesale Corp.*, No. 7:10-cv-9012 (VB), 2011 WL 3806255, at *2 (S.D.N.Y. Aug. 24, 2011).  In applying the FAA, the Second Circuit has long held that "[t]he federal policy favoring arbitration requires [courts] to construe arbitration clauses as broadly as possible," *S.A. Mineracoa da Tridade-Samitri v. Utah Int'l, Inc.*, 745 F.2d 190, 194 (2d Cir. 1984), and that "any doubts concerning the scope of arbitrable issues [should be] resolved in favor of arbitration." *Oldroyd v. Elmira Sav. Bank, FSB*, 134 F.3d 72, 76 (2d Cir. 1998) (quotation marks and citation omitted).  The Second Circuit has also held that a dispute should be deemed to be arbitrable "unless it may be said with positive assurance that the arbitration clause is not susceptible of an interpretation that covers the asserted dispute." *McMahan Sec. Co. v. Forum Capital Mkts. L.P.*, 35 F.3d 82, 88 (2d Cir. 1994).  Moreover, the Second Circuit has held that the federal "policy in favor of arbitration is even stronger in the context of international business transactions" because the "[e]nforcement of international arbitral agreements promotes the smooth flow of international transactions by removing the

threats and uncertainty of time-consuming and expensive litigation." *David L. Threlkeld & Co., Inc. v. Metallgesellschaft Ltd. (London)*, 923 F.2d 245, 248 (2d Cir. 1991).

In determining whether a dispute is arbitrable, courts apply a two-prong test which considers "'(1) whether there exists a valid agreement to arbitrate at all under the contract in question . . . and if so, (2) whether the particular dispute sought to be arbitrated falls within the scope of the arbitration agreement.'" *Rubin v. Sona Int'l Corp.*, 457 F. Supp. 2d 191, 195 (S.D.N.Y. 2006) (citation omitted). If the dispute is found to be arbitrable, courts will dismiss the action where "all of the issues raised in [the] plaintiff's complaint are arbitrable." *Hamerslough v. Hipple*, No. 10-cv-3056 (NRB), 2010 WL 4537020, at *4 (S.D.N.Y. Nov. 4, 2010) (Buchwald, J.). As detailed below, this Court should dismiss the Complaint because (i) Trump Marks and Cap Cana entered into a valid agreement to arbitrate any audit and fee disputes under the License Agreement, (ii) the claims alleged in the Complaint clearly fall within the scope of the parties' agreement to arbitrate, and (iii) all the issues raised in the Complaint are arbitrable under that agreement.

### A.    Trump Marks And Cap Cana Entered Into A Valid And Enforceable Agreement To Arbitrate Any Audit And Fee Disputes

In entering into the License Agreement, Trump Marks and Cap Cana – two sophisticated international commercial parties advised by counsel – expressly agreed to arbitrate any audit and fee disputes under the License Agreement: "In the event there shall arise a difference or dispute between Licensor and Licensee concerning any audit conducted by Licensor under this Agreement or the amount due to Licensor hereunder (each an "**Audit Dispute**"), either Licensor or Licensee may submit the Audit Dispute to arbitration . . . ." Ex. A (License Agreement) at 26 (Clause 4(c)). Trump Marks and Cap Cana further expressed their clear intent to arbitrate such audit and fee disputes by painstakingly identifying the qualifications that each arbitrator would

have to possess before being appointed:  "The arbitrators shall all be licensed real estate brokers, proficient in Spanish, with at least ten (10) years full-time commercial brokerage experience with the selling and development of luxury properties (comparable to the Development Components contemplated to be developed pursuant to this Agreement) in the Dominican Republic, or another comparable area of the Caribbean." *Id.*

As further evidence of their clear intent to arbitrate any audit and fee disputes, Trump Marks and Cap Cana included an arbitration clause in the License Agreement which expressly provides that the arbitration of such disputes would be conducted "in accordance with the then prevailing Expedited Procedures of the Arbitration Rules for the Real Estate Industry of the American Arbitration Association or its successor for arbitration of commercial disputes as herein modified."  *Id.* at 51 (Clause 18(a)).  Trump Marks and Cap Cana also set forth the specific procedures and deadlines that govern the arbitration of any audit and fee disputes under the License Agreement.  *Id.* at 52-53 (Clause 18(b)-(e)).

By including in the License Agreement such express and detailed language, Trump Marks and Cap Cana clearly manifested their intent to enter into a valid and enforceable agreement to arbitrate any audit and fee disputes under the License Agreement.  *See, e.g.*, 9 U.S.C. § 2 ("A written provision in any . . . contract evidencing a transaction involving [interstate or international] commerce to settle by arbitration a controversy thereafter arising out of such contract or transaction . . . shall be valid, irrevocable, and enforceable . . . ."); *McDonell Douglas Fin. Corp. v. Pennsylvania Power & Light Co.*, 858 F.2d 825, 830 (2d Cir. 1988) (citing numerous cases to hold that a valid and enforceable arbitration agreement exists whenever the contractual "language clearly manifests an intention by the parties to submit certain disputes to a

specified third party for binding resolution"); *Starr v. Firstmark Corp.*, No. 12-cv-4023 (SJF) (AKT), 2012 WL 4891622, at *7 (E.D.N.Y. Oct. 1, 2012) (same).[5]

### B.   Trump Marks' Claims Fall Within The Scope Of The Arbitration Agreement

The factual premise of Trump Marks' claims in the Complaint is that the findings of the July 2009 audit that Trump Marks conducted of Cap Cana's books and records allegedly establish that Trump Marks is owed approximately $5.8 million under the License Agreement. *See, e.g.*, Compl. ¶¶ 5-7, 40-41, 43, 46.

The License Agreement expressly provides for the arbitration of any "difference or dispute between [Trump Marks] and [Cap Cana] concerning ***any*** audit conducted by [Trump Marks] under this Agreement ***or*** the amount due to [Trump Marks] hereunder." Ex. A (License Agreement) at 26 (Clause 4(c)) (emphasis added). Thus, Trump Marks' claims – all of which seek the payment of approximately $5.8 million in fees and accrued interest supposedly owed to Trump Marks under the License Agreement and are based exclusively on the purported results of Trump Marks' July 2009 audit of Cap Cana's books and records – clearly fall within the scope of this arbitration agreement. *See, e.g.*, *Alghanim v. Alghanim*, 828 F. Supp. 2d 636, 653 (S.D.N.Y. 2011) (Buchwald, J.) ("[I]n determining whether a particular claim falls within the scope of the parties' arbitration agreement, we focus on the factual allegations in the complaint rather than the legal causes of action asserted. If the allegations underlying the claims touch matters covered by the parties' contracts, then those claims must be arbitrated, whatever the labels attached to them." (quotations marks and citation omitted)); *JLM Indus., Inc. v. Stolt-Nielsen SA*, 387 F.3d 163, 173 (2d Cir. 2004) (same).

---

[5] Federal arbitration law, rather than state law, governs whether Trump Marks and Cap Cana entered into a valid and enforceable arbitration agreement because "[t]he Supreme Court has clearly held that the [FAA] applies in federal court to diversity suits which relate to contracts involving interstate or international commerce." *Threlkeld*, 923 F.2d at 249 (citing *Prima Paint Corp. v. Flood & Conklin Mfg. Co.*, 388 U.S. 395, 402 (1967)).

The conclusion that Trump Marks' claims fall within the scope of the agreement to arbitrate any audit and fee disputes is further supported by the strong federal policy favoring the enforcement and broad interpretation of arbitration agreements – a policy that the Supreme Court has expressly held applies with special force where, as here, the dispute is between international commercial parties. *See, e.g.*, *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 24-25 (1983); *Oldroyd*, 134 F.3d at 76; *S.A. Mineracoa*, 745 F.2d at 194; *McMahon Sec. Co.*, 35 F.3d at 88; *Threlkeld*, 923 F.2d at 248.

### C.     Trump Marks' Claims Against The Individual Defendants Are Also Arbitrable

As set forth in Section III, Trump Marks has no claims against the Individual Defendants because they are not parties to the License Agreement.  Even if Trump Marks did have claims against the Individual Defendants, these claims would nonetheless be arbitrable because it is well-settled that a non-signatory to an arbitration agreement can invoke such an agreement against a signatory when there is a close relationship between the claims asserted by the signatory (here Trump Marks) against the non-signatory (here the Individual Defendants) on the one hand, and the contract containing the arbitration agreement (here the License Agreement) on the other hand. *See, e.g.*, *JLM Indus.*, 387 F.3d at 177-78; *Astra Oil Co. v. Rover Navigation, Ltd.*, 344 F.3d 276, 280-82 (2d Cir. 2003); *Choctaw Generation L.P. v. Am. Home Assurance Co.*, 271 F.3d 403, 406-07 (2d Cir. 2001); *Smith/Enron Cogeneration Ltd. v. Smith Cogeneration Int'l, Inc.*, 198 F.3d 88, 98 (2d Cir. 1999).

Here, there is clearly a close relationship between Trump Marks' claims against the Individual Defendants and the License Agreement.  Indeed, Trump Marks' claims against the Individual Defendants assume that the Individual Defendants are parties to the License Agreement by asserting that the Individual Defendants breached certain duties under the License

Agreement and by seeking to hold the Individual Defendants liable for fees and accrued interest supposedly owed to Trump Marks under that License Agreement. *See, e.g.*, Compl. ¶¶ 1, 48-66.

**D.    Dismissal Of A Complaint Is The Appropriate Remedy Where, As Here, The Claims Asserted In The Complaint Are Arbitrable**

Courts in this Circuit routinely dismiss actions where, as here, all of the issues and claims raised in the complaint are arbitrable. *See, e.g.*, *Spencer-Franklin v. Citigroup/Citibank N.A.*, No. 06-cv-3475(GBD)(GWG), 2007 WL 521295, at *4 (S.D.N.Y. Feb. 21, 2007) (dismissing case because "[a]ll courts of which we are aware have followed the rule that, '[w]here all of the issues raised in the Complaint must be submitted to arbitration, the Court may dismiss an action . . .'" (citation omitted)); *Titan Pharm. & Nutrition, Inc. v. Medicine Shoppe Int'l, Inc.*, No. 05-cv-10580(SAS), 2006 WL 626051, at *6 (S.D.N.Y. Mar. 13, 2006) (same); *Rubin*, 457 F. Supp. 2d at 198 (same); *Najib v. Arnold*, No. 03-cv-3010(CBM), 2005 WL 221429, at *4 (Jan. 31, 2005) (same).[6] Relying on this well-established case law, this Court dismissed the complaint in *Hamerslough v. Hipple* because "all of the issues raised in [the] plaintiff's complaint [were] arbitrable." 2010 WL 4537020, at *4. This Court should do the same here.

**III.    THIS COURT SHOULD DISMISS THE CLAIMS AGAINST THE INDIVIDUAL DEFENDANTS FOR LACK OF PERSONAL JURISDICTION**

In diversity cases, the question of whether a court has personal jurisdiction over a non-domiciliary defendant "is determined by the law of the state in which the district court sits, which in this case is New York." *DiStefano v. Carozzi N. Am., Inc.*, 286 F.3d 81, 84 (2d Cir. 2001). Under New York law, a plaintiff must plead facts sufficient to show that personal jurisdiction over a non-domiciliary defendant exists under New York's long-arm statute. *Id.* In

---

[6] *See also Perry v. N.Y. Law Sch.*, No. 03-cv-9221(GBH), 2004 WL 1698622, at *4 (S.D.N.Y. July 28, 2004); *Mahant v. Lehman Bros.*, No. 99-cv-4421 MBM, 2000 WL 1738399, at *3 (S.D.N.Y. Nov. 22, 2000); *E. Fish Co. v. S. Pac. Shipping Co., Ltd.*, 105 F. Supp. 2d 234, 241-42 & n.10 (S.D.N.Y. 2000); *Berger v. Cantor Fitzgerald Sec.*, 967 F. Supp. 91, 96 (S.D.N.Y.1997).

addition, a plaintiff must establish that the exercise of such jurisdiction comports with the requirements of due process. *Id.*

In opposing a motion to dismiss for lack of personal jurisdiction, a "plaintiff bears the burden of establishing that the court has jurisdiction over the defendant." *Whitaker v. Am. Telecasting, Inc.*, 261 F.3d 196, 208 (2d Cir. 2001). To satisfy this burden, "'a plaintiff must make a prima facie showing that jurisdiction exists.'" *Best Van Lines, Inc. v. Walker*, 490 F.3d 239, 242 (2d Cir. 2007) (citation omitted). Thus, a motion to dismiss for lack of personal jurisdiction should be granted unless the plaintiff "'plead[s] facts which, if true, are sufficient in themselves to establish jurisdiction.'" *Tamam v. Fransabank Sal*, 677 F. Supp. 2d 720, 725 (S.D.N.Y. 2010) (citation omitted). Courts have held that a plaintiff fails to plead facts sufficient to establish the existence of personal jurisdiction where the complaint merely contains "conclusory non-fact-specific jurisdictional allegations or a legal conclusion couched as factual allegation." *Id.* (quotation marks and citation omitted). In determining whether a plaintiff has made a prima facie showing of personal jurisdiction, a "court need not draw argumentative inferences in the plaintiff's favor," *id.* (quotation marks and citation omitted), and may consider affidavits and declarations submitted by the defendant. *DiStefano*, 286 F.3d at 84.

As detailed below, Trump Marks has failed to make a prima facie showing that personal jurisdiction exists over the Individual Defendants because Trump Marks has alleged solely that this Court has personal jurisdiction over Cap Cana, Compl. ¶ 8, and the facts alleged in the Complaint are insufficient to establish that personal jurisdiction over the Individual Defendants exists under New York's long-arm statute or that the exercise of such jurisdiction would comport with the requirements of due process.

A.   **Trump Marks Has Failed To Establish That This Court Has Personal Jurisdiction Over The Individual Defendants Under New York's Long-Arm Statute**

New York's long-arm statute provides for two types of jurisdiction over a non-domiciliary defendant:  (i) general personal jurisdiction and (ii) specific personal jurisdiction. *See* C.P.L.R. §§ 301, 302.  "For general jurisdiction, i.e., exercise of jurisdiction over *any* dispute involving the party, [the] plaintiff's cause of action need not arise out of [the non-domiciliary] defendant's contacts with [New York]–rather, the defendant's contacts with [New York] must be substantial." *Nautilus Ins. Co. v. Adventure Outdoors, Inc.*, 247 F.R.D. 356, 358-59 (E.D.N.Y. 2007).  "For specific jurisdiction, i.e., specific *only* to those cases in which the [non-domiciliary] defendant's contacts with [New York] are not substantial, the plaintiff's cause of action must arise out of [the] defendant's contacts with [New York] which, although not substantial, satisfy [New York's] long arm statute." *Id.* at 359.  The facts alleged by Trump Marks do not permit this Court to exercise general or specific personal jurisdiction over the Individual Defendants.

1.   **The Individual Defendants Are Not Subject To General Personal Jurisdiction**

New York's general personal jurisdiction statute provides that "[a] court may exercise such jurisdiction over persons, property, or status as might have been exercised heretofore." C.P.L.R. § 301.  Under this statute, a non-domiciliary defendant is subject to general personal jurisdiction in New York where the defendant engages in "continuous and systematic" business in New York. *Jazinini v. Nissan Motor Co.*, 148 F.3d 181, 184 (2d Cir. 2000); *see also Wiwa v. Royal Dutch Petroleum Co.*, 226 F.3d 88, 98 (2d Cir. 2000).  In determining whether a non-domiciliary defendant conducts "continuous and systematic" business in New York, courts do not engage in "contact counting," but rather inquire whether the defendant's contacts with New York are "continuous, permanent, and substantial." *Landoll Res. v. Alexander & Alexander*

*Serv.*, 918 F.2d 1039, 1043 (2d Cir. 1990).  In conducting this inquiry, courts consider various factors, including "'the existence of an office in New York; the solicitation of business in New York; and the presence of employees or agents in New York.'"  *Schultz v. Safra Nat. Bank of N.Y.*, 377 Fed. App'x 101, 102-03 (2d Cir. 2010) (citation omitted).[7]  None of these factors is present here.

As an initial matter, Trump Marks has not alleged that any of the Individual Defendants has an office in New York, solicits business in New York or has any employees or agents in New York.  In addition, the Individual Defendants' sworn declarations expressly state that they do not regularly conduct business in New York in their personal capacity.  R. Hazoury Decl. ¶ 6; F. Hazoury Decl. ¶ 6; A. Hazoury Decl. ¶ 7; C. Hazoury Decl. ¶ 8; Spence Decl. ¶ 7; Rodriguez Decl. ¶ 7; Vargas Decl. ¶ 8.  Moreover, the Individual Defendants' sworn declarations establish that they do not engage in "continuous and systematic" business in New York, *Landoll Res*, 918 F.2d at 1043, because the declarations expressly state that the Individual Defendants do not:

- work or reside in New York;

- own or lease any property in New York;

- maintain an office, place of business, mailing address or telephone listing in New York;

- employ anyone in New York;

- own any business that is registered in, markets to, or conducts business transactions in New York;

- hold any investments or assets in New York;

- control any corporation that is registered in, markets to, or conducts business transactions in New York;

---

[7] "Solicitation alone will not ordinarily show that a defendant is 'doing business' in New York . . . ."  *Schultz*, 377 Fed. App'x at 103 (quotation marks and citation omitted).

- solicit in their personal capacity any business in New York;

- serve on the board of directors of any entity incorporated or otherwise based in New York;

- supervise, manage or make any charitable contributions to any charities, benevolent organizations, or non-profit organizations in New York;

- maintain any personal bank accounts or investment accounts of any type in New York;

- owe or pay taxes in New York; and/or

- have an appointed agent for service of process in New York.

R. Hazoury Decl. ¶¶ 6-7; F. Hazoury Decl. ¶¶ 6-7, 8; A. Hazoury Decl. ¶¶ 7-8, 10; C. Hazoury Decl. ¶¶ 8-9, 11; Spence Decl. ¶¶ 7-8, 10; Rodriguez Decl. ¶¶ 7-8, 10; Vargas Decl. ¶¶ 8-8, 11.

Furthermore, the Individual Defendants' declarations establish that four of the Individual Defendants never even traveled to New York in connection with the License Agreement.  A. Hazoury Decl. ¶¶ 12-14; C. Hazoury Decl. ¶¶ 13-16; Rodriguez Decl. ¶¶ 12-15; Vargas Decl. ¶¶ 13-16.  With respect to the three Individual Defendants who did travel to New York, the declarations make clear that these Individual Defendants traveled to New York solely in their capacities as Cap Cana officers and directors.  R. Hazoury Decl. ¶ 9; F. Hazoury Decl. ¶ 10; Spence Decl. ¶¶ 14-16.  Such trips cannot serve as the basis to exercise personal jurisdiction over these Individual Defendants because "[i]t is well-settled that . . . an officer of [a] corporation does not subject himself individually to [Section] 301 jurisdiction unless he is doing business in [New York] individually." *Black v. USA Travel Auth., Inc.*, No. 99-cv-11278, 2001 WL 761070, at *4 (S.D.N.Y. July 6, 2001) (quotation marks and citation omitted); *see also RSM Prod. Corp. v. Fridman*, 643 F. Supp. 2d 382, 400 (S.D.N.Y. 2009) ("An individual cannot be subject to jurisdiction under C.P.L.R. § 301 unless he is doing business in New York *on his own behalf*

rather than on behalf of a corporation."); *Jain v. Sec. Indus. & Fin. Markets Ass'n*, No. 08 Civ. 6463(DAB), 2009 WL 3166684, at *2-3 (S.D.N.Y. Sept. 28, 2009) (holding that individual defendant was not subject to jurisdiction in New York because his contacts with New York were "part of his [work] 'duties and obligations'" or "'in furtherance of his duties for [the corporate defendant]'" (citation omitted)).

Thus, the record clearly establishes that the Individual Defendants are not subject to general personal jurisdiction under New York's long-arm statute.  *See Siks for Justice v. Nath*, 850 F. Supp. 2d 435, 444-45 (S.D.N.Y. 2012) (holding that non-domiciliary defendant was not subject to general personal jurisdiction because the defendant had "no office in New York, no bank account or other property in New York, an[d] no employees or agents in New York" and because the defendant's contacts with New York were in his professional, rather than personal, capacity).

### 2. The Individual Defendants Are Not Subject To Specific Personal Jurisdiction

New York's long-arm statute allows for the exercise of specific jurisdiction over a non-domiciliary defendant in three circumstances:  "(1) if the nondomiciliary transacts business in [New York] and the claim arises out of that business transaction; (2) if the nondomiciliary commits a tortious act within [New York]; or (3) if the nondomiciliary commits a tortious act [outside New York] injuring a person within [New York]." *Knight-McConnell v. Cummins*, No. 03-cv-5035(NRB), 2005 WL 1398590, at *2 (S.D.N.Y. June 13, 2005) (Buchwald, J.).  In each of these circumstances, "there must be 'a strong nexus between the plaintiff's cause of action and the defendant's in state conduct' for [specific personal] jurisdiction to apply." *Id.* (citation omitted).  None of these circumstances is present here.

*CPLR § 302(a)(1)*:  Section 302(a)(1) provides that specific personal jurisdiction can be exercised over a non-domiciliary defendant who "transacts any business within [New York] or contracts anywhere to supply goods or services in [New York]." C.P.L.R. § 302(a)(1).  This provision does not provide a basis for exercising personal jurisdiction over the Individual Defendants because Trump Marks has not alleged that any of the Individual Defendants conducts any business in New York or supplies goods or services in New York.  In addition, Trumps Marks' claims arise out of the alleged breach of the License Agreement rather than any business transactions conducted by the Individual Defendants in New York.  *See* Compl. ¶¶ 48-87. Consequently, there is no "strong nexus" between Trump Marks' causes of action and any business transactions by the Individual Defendants in New York.  *See, e.g.*, *Knight-McConnell*, 2005 WL 1398590, at *2-3 (holding that personal jurisdiction could not be exercised under Section 302(a)(1) because the plaintiff failed to adequately allege that the defendant transacted business in New York); *Reiss v. Steigrod*, 866 F. Supp. 747, 749-50 (S.D.N.Y. 1994) (holding that personal jurisdiction under Section 302(a)(1) could not be exercised because the plaintiff failed to adequately allege that the defendant transacted business in New York and, in any event, plaintiff's causes of action did not arise out of any of the defendant's supposed business transactions in New York).

*CPLR § 302(a)(2)*:  Section 302(a)(2) provides that specific personal jurisdiction can be exercised over a non-domiciliary defendant who "commits a tortious act within [New York]." C.P.L.R. § 302(a)(2).  This provision – which is "strictly construed" and requires that the alleged tortious act be committed while the non-domiciliary defendant is "physically present in New York" – is inapplicable here because Trump Marks has not alleged that any of the Individual Defendants committed a tortious act in New York.  *Reiss*, F. Supp. at 750 ("Plaintiff does not

allege that defendant committed tortious conduct within the state of New York; thus, § 302(a)(2) does not provide a basis of jurisdiction over defendant."). In addition, Trumps Marks' claims arise out of the alleged breach of the License Agreement rather than any tortious acts committed by the Individual Defendants in New York. *See* Compl. ¶¶ 48-87. Consequently, there is no "strong nexus" between Trump Marks' causes of action and any tortious acts committed by the Individual Defendants in New York. *See Knight-McConnell*, 2005 WL 1398590, at *2-3 (holding that jurisdiction under Section 302(a)(2) did not exist because this provision requires that there be a "'strong nexus between the plaintiff's cause of action and the defendant's in state [tortious] conduct'" and because the plaintiff failed to adequately allege that the defendant committed a tortious act in New York).

*CPLR § 302(a)(3)*: Section 302(a)(3) provides that specific personal jurisdiction can be exercised over a non-domiciliary defendant who "'commits a tortious act [outside New York]' injuring a person within New York and the non-domiciliary either (1) regularly does or solicits business in [New York], or (2) derives substantial revenue from interstate [or international] commerce and should reasonably expect the tortious act to have consequences in [New York]." *Id.* at *4 (quoting C.P.L.R. § 302(a)(3)). This provision does not provide a basis for exercising personal jurisdiction over the Individual Defendants because Trump Marks has not alleged that the Individual Defendants committed a tortious act outside New York that caused an injury in New York. In addition, Trump Marks "has not alleged, nor does the record reflect, that [the Individual Defendants have] engaged in regular business in New York, or derived substantial revenue from interstate [or international] commerce and should reasonably have expected [that any] tortious acts would have consequences in [New York.]." *Id.* (holding that "there is no

jurisdiction under section 302(a)(3)" where the plaintiff has failed to allege the necessary facts).[8]

Moreover, Trump Marks' claims arise out of the alleged breach of the License Agreement rather

than any tortious acts committed by the Individual Defendants outside New York.  *See* Compl.

¶¶ 48-87.  Consequently, there is no "strong nexus" between Trump Marks' causes of action and

any tortious acts committed by the Individual Defendants outside New York.  *See Knight-*

*McConnell*, 2005 WL 1398590, at *2.[9]

### B. The Exercise Of Personal Jurisdiction Over The Individual Defendants Would Violate The Requirements Of Due Process

In determining whether the exercise of personal jurisdiction over a non-domiciliary

defendant comports with the requirements of due process, courts consider:  "(1) the burden that

the exercise of jurisdiction will impose on the defendant; (2) the interests of the forum state in

adjudicating the case; (3) the plaintiff's interest in obtaining convenient and effective relief; (4)

the interstate judicial system's interest in obtaining the most efficient resolution of the

controversy; and (5) the shared interest of the states in furthering substantive social policies."

*Metro. Life Ins. Co. v. Robertson-Ceco Corp.*, 84 F.3d 560, 568 (2d Cir. 1996).  The application

of these factors here makes clear that the exercise of personal jurisdiction over the Individual

Defendants "would offend 'traditional notions of fair play and substantial justice'" under the Due

---

[8] In addition, the Individual Defendants have expressly stated that they do not conduct regular business in New York. R. Hazoury Decl. ¶¶ 6-7; F. Hazoury Decl. ¶¶ 6-7, 8; A. Hazoury Decl. ¶¶ 7-8, 10; C. Hazoury Decl. ¶¶ 8-9, 11; Spence Decl. ¶¶ 7-8, 10; Rodriguez Decl. ¶¶ 7-8, 10; Vargas Decl. ¶¶ 8-9, 11.

[9] Under C.P.L.R. § 302(a)(4), a non-domiciliary defendant is subject to specific personal jurisdiction in New York where the plaintiff's cause of action arises out of the defendant's ownership, use or possession of real property in New York. This provision is inapplicable here because (i) Trump Marks has not alleged that any of the Individual Defendants own, use or possess real property in New York, and (ii) Trump Marks' claims arise out of the alleged breach of the License Agreement rather than the Individual Defendants' ownership, possession or use of any real property in New York. In addition, the Individual Defendants' sworn statements establish that they do not own or lease any real property in New York. R. Hazoury Decl. ¶ 5; F. Hazoury Decl. ¶ 5; A. Hazoury Decl. ¶ 6; C. Hazoury Decl. ¶ 7; Spence Decl. ¶ 6; Rodriguez Decl. ¶ 6; Vargas Decl. ¶ 7.

Process Clause. *Asahi Metal Indus. Co., Ltd. v. Sup. Ct. of Cal., Solano Cty.*, 480 U.S. 102, 113 (1987) (quotation marks and citation omitted).

*First*, the burden imposed on the Individual Defendants by this Court's exercise of personal jurisdiction would be severe because the Individual Defendants would be forced to defend themselves in a foreign judicial system using a foreign language and would have to travel from the Dominican Republic to New York for court hearings, depositions and trial. Notably, the Supreme Court has expressly held that courts must place considerable weight on the gravity of the burdens imposed on a non-U.S. defendant who must defend an action in the United States when determining whether the exercise of jurisdiction comports with traditional notions of fair play and substantial justice under the Due Process Clause:

> Certainly the burden on the defendant in this case is severe. [Defendant] has been commanded by the Supreme Court of California not only to traverse the distance between [Defendant's] headquarters in Japan and the Superior Court of California in and for the County of Solano, but also to submit its dispute with [Plaintiff] to a foreign nation's judicial system. The unique burdens placed upon one who must defend oneself in a foreign legal system should have significant weight in assessing the reasonableness of stretching the long arm of personal jurisdiction over national borders.

*Id.*

*Second*, any interest that New York or the United States has in adjudicating Trump Marks' claims against the Individual Defendants is minimal because Trump Marks' claims arise out of the alleged breach of the License Agreement for the development and marketing of a real estate project in the Dominican Republic. In addition, the Individual Defendants' alleged wrongdoing would have taken place in the Dominican Republic, not in New York or any other state in the United States. *Id.* (holding that California's interest in adjudicating the plaintiff's claims was "slight" because the conduct underlying the claims occurred in the defendant's native

country); *Metro. Life Ins.*, 84 F.3d at 574 (same).  Moreover, the fact that the License Agreement is governed by New York law and subjects the contracting parties to the jurisdiction of state and federal courts in New York County is of no moment because the Individual Defendants are not parties to the License Agreement.  Ex. A (License Agreement) at 1, 58.

*Third*, any supposed interest that Trump Marks has in prosecuting its claims against the Individual Defendants in New York is minimal for the reasons set forth directly above and is clearly outweighed by the "severe" and "unique burdens" that would be imposed upon the Individual Defendants, who are not parties to the License Agreement, if they "must defend [themselves] in a foreign legal system." *Asahi*, 480 U.S. at 114 (holding that the plaintiff's interest in prosecuting his claims in California was "slight" because the conduct underlying the claims occurred in the defendant's native country).

*Fourth*, this Court's exercise of personal jurisdiction would not promote the efficient resolution of Trump Marks' claims against the Individual Defendants.  To the contrary, this Court's exercise of personal jurisdiction will result in significant inefficiencies because it will extend the duration of this litigation and require the parties to incur substantial and unnecessary expenses given that an overwhelming amount of the evidence and witnesses are located in the Dominican Republic. *Metro. Life Ins.* , 84 F.3d at 574 (holding that the forum's exercise of jurisdiction would not promote the efficient resolution of the case because the witnesses and other evidence were located outside the forum).  For instance, Cap Cana's books and records, which served as the basis for Trump Marks' July 2009 audit, are all located in the Dominican Republic.  Ex. A (License Agreement) at 26 (Clause 4(c)) (granting Trump Marks the right to "audit [Cap Cana's] books and records in the Dominican Republic").  Similarly, most of the

important witnesses – such as the Individual Defendants and the accountants who conducted Trump Marks' July 2009 audit – reside in the Dominican Republic. Compl. ¶¶ 5, 13-18.

*Finally*, this Court's exercise of personal jurisdiction over the Individual Defendants would not promote any of New York's or the United States' substantive social policies because the Individual Defendants' alleged wrongdoing would have occurred in the Dominican Republic and the Cap Cana Project is being developed in the Dominican Republic.

## IV.   TRUMP MARKS' REMAINING CLAIMS SHOULD ALSO BE DISMISSED

### A.   Trump Marks Has Failed To State A Breach Of Contract Claim Against The Individual Defendants

Trump Marks' breach of contract claim against the Individual Defendants must be dismissed because the Individual Defendants are not parties to the License Agreement. Ex. A (License Agreement) at 1, 58; *Berman v. Sugo LLC*, 580 F. Supp. 2d 191, 202 (S.D.N.Y. 2008) ("A claim that fails 'to allege facts sufficient to show that an enforceable contract existed' between the parties is subject to dismissal." (citation omitted)).

### B.   Trump Marks Cannot State A Claim For The Breach Of The Covenant Of Good Faith And Fair Dealing

Trump Marks' claim that Defendants breached the implied covenant of good faith and fair dealing in the License Agreement should be dismissed because it is premised on the same facts underlying Trump Marks' breach of contract claim. *See, e.g., Obex Sec., LLC v. Healthzone Ltd.*, No. 10-cv-6876(SAS), 2011 WL 710608, at *2 (S.D.N.Y. Feb. 28, 2011) ("'[A] claim for breach of the implied covenant [of good faith and fair dealing] will be dismissed as redundant where the conduct allegedly violating the implied covenant is also the predicate for breach of . . . an express provision of the underlying contract.'" (citation omitted)). This claim should also be dismissed with respect to the Individual Defendants, who are not parties to the License Agreement, because "[a] cause of action based upon a breach of a covenant of good faith

and fair dealing requires a contractual obligation between the parties." *Duration Mun. Fund, L.P. v. J.P. Morgan Sec. Inc.*, 908 N.Y.S.2d 684, 685 (1st Dep't 2010).

### C.   Trump Marks Has Failed To Adequately Allege A Corporate Veil Piercing Claim

Trump Marks' corporate veil piercing claim against the Individual Defendants is governed by Dominican law because Cap Cana is incorporated in the Dominican Republic. *See U.S. v. Funds Held in the Benefit of Wetterer*, 210 F.3d 96, 106 (2d Cir. 2000).  To succeed on its veil piercing claim, Trump Marks must overcome the well-settled principle that "[c]ourts must be extremely reluctant to disregard corporate form, and should do so only when the corporation *primarily* transacts the business of the dominating interest rather than its own." *Id.* (quotation marks and citations omitted).  Here, Trump Marks has failed to allege any facts sufficient to show that Cap Cana "*primarily* transacts the business of the [Individual Defendants]," *id.*, or any other allegation sufficient to support a corporate veil piercing claim.

Under Dominican law, a plaintiff seeking to pierce the corporate veil must show that:  (i) the defendant used the corporate entity to accomplish an unlawful purpose; (ii) the defendant intended to use the corporate entity to accomplish an unlawful purpose; and (iii) the failure to pierce the corporate veil will subject the plaintiff to an injustice.  *See* Chupani Aff. ¶¶ 22-25. Notably, there is no precedent in the Dominican Republic in which a private party has been permitted to pierce the corporate veil under this test.  Trump Marks' bare-bone and conclusory allegations are insufficient to make it the first private party to succeed.  *Id.* ¶ 26.

*First*, Trump Marks' allegations do not show that the Individual Defendants used Cap Cana's corporate status to accomplish an unlawful purpose because, among other things, Trump Marks has not made the requisite allegations that Cap Cana lacked adequate corporate governance procedures or that Cap Cana disregarded general corporate formalities.  *Id.* ¶ 23.

*Second*, Trump Marks' conclusory assertion that the Individual Defendants retained for their personal use the proceeds from the sale of certain properties and attempted to deceive Trump Marks through the issuance of allegedly false sales reports is insufficient to show that each of the Individual Defendants intended to use Cap Cana to accomplish an unlawful purpose. Trump Marks has failed to allege any facts plausibly suggesting that the Individual Defendants retained for their personal use the proceeds from the sale of any properties. Despite having been granted full access to Cap Cana's books and records, Trump Marks has not alleged the profits supposedly earned from each sale, the amount of the sale profits that each Individual Defendant purportedly retained for his or her personal use, or the involvement of each Individual Defendant in the preparation and dissemination of the allegedly false sales reports that were provided to Trump Marks.

*Finally*, Trump Marks cannot show that it will suffer an injustice if the corporate veil between Cap Can and the Individual Defendants is not pierced because Trump Marks, which admits that it has already received approximately 70% of the licensing fees that Cap Cana supposedly owed to it, can seek to obtain an award against Cap Cana.[10]

### D.   Trump Marks' Conclusory Allegations Are Insufficient To Warrant The Extraordinary Remedy Of The Appointment Of A Receiver

It is well-settled that "'appointment of a receiver is considered to be an extraordinary remedy, and should be employed cautiously and granted only when clearly necessary to protect

---

[10] Trump Marks' veil piercing claim would also be subject to dismissal under New York law. New York law requires a party seeking to pierce the corporate veil to show that "'(1)the owners exercised complete domination of the corporation in respect to the transaction attacked; and (2) that such domination was used to commit a fraud or wrong against the plaintiff which resulted in plaintiff's injury.'" *EED Holdings v. Palmer Johnson Acquisition Corp.*, 228 F.R.D. 508, 512 (S.D.N.Y. 2005) (citation omitted). Because Trump Marks' veil piercing claim is premised on the Individual Defendants' alleged intent to defraud Trump Marks out of licensing fees supposedly owed to Trump Marks, Trump Marks' veil piercing claim would have to satisfy the heightened pleading standards of Federal Rule of Civil Procedure 9(b). *Id.* For the reasons set forth above, Trump Marks' allegations do not satisfy Rule 9(b)'s heightened pleading standard.

[a] plaintiff's interests in the property.'" *Ryan Beck & Co., Inc. v. Daly Holdings, Inc.*, No. 06-cv-5349 RCC, 2006 WL 3775964, at *2 (Dec. 19, 2006) (citations omitted); *see also Altissima Ltd. v. One Niagara, LLC,* No. 08-cv-756-JTC, 2009 WL 1322319, at *1 (W.D.N.Y. May 8, 2009) ("Recognizing that appointment of a temporary receiver is an extraordinary remedy which results in the taking and withholding of possession of property from a party without an adjudication on the merits, the courts have required the party seeking the remedy to make a clear showing that the appointment is necessary to prevent irreparable injury to the property interests at stake." (quotation marks and citation omitted)).

Here, even if a United States District Court in New York had the ability to appoint a receiver for a foreign company that does not conduct business in New York, Trump Marks has failed to "make a clear showing that the appointment [of a receiver] is necessary" to ensure that Trump Marks receives payment of the licensing fees and accrued interest allegedly owed to Trump Marks under the License Agreement. *Altissima*, 2009 WL 1322319, at *1.  Indeed, Trump Marks' own allegations preclude Trump Marks from making such a showing because Trump Marks has affirmatively pled that Cap Cana has already paid approximately 70% of the $15 million in fees and accrued interest that Trump Marks' July 2009 audit supposedly showed were due to Trump Marks.[11]  Compl. ¶¶ 5-6, 41-44, 51, 62, 73, 81.

## CONCLUSION

For the foregoing reasons, this Court should grant Defendants' motion to dismiss Trump Marks' Complaint with prejudice.

---

[11] Trump Marks' assertion of an accounting cause of action (*id.* ¶¶ 67-81) also precludes Trump Marks from making the necessary showing for the appointment of a receiver because courts have held that the drastic measure of appointing a receiver is improper where a plaintiff can obtain relief after a final accounting is conducted. *See, e.g., Armienti v. Brooks*, 767 N.Y.S.2d 2, 4 (1st Dep't 2003); *Harrison Realty Corp. v. Axon*, 744 N.Y.S.2d 23, 24 (1st Dep't 2002).

Dated: New York, New York
       November 16, 2012

Respectfully submitted,
SIMPSON THACHER & BARTLETT LLP

By _____

William T. Russell, Jr. (wrussell@stblaw.com)
Juan A. Arteaga (jarteaga@stblaw.com)

425 Lexington Avenue
New York, New York  10017-3954
Telephone: (212) 455-2000
Facsimile:  (212) 455-2502

*Attorneys for Defendants Cap Cana, S.A.,
Ricardo Hazoury, Fernando Hazoury, Abraham
Hazoury, Catherine Kury Hazoury, George
Spence, Michel Rodriguez and Michell Vargas*