UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

TRUMP MARKS REAL ESTATE LLC,

                    Plaintiff,

          - against -

CAP CANA, S.A., RICARDO HAZOURY,
FERNANDO HAZOURY, ABRAHAM HAZOURY,
CATHERINE KURY HAZOURY, GEORGE
SPENCE, MICHEL RODRIQUEZ and MICHELL
VARGAS,

                    Defendants.

Index No. 12-CV-6440-NRB

**<u>ORAL ARGUMENT REQUESTED</u>**

**PLAINTIFF'S MEMORANDUM OF LAW IN OPPOSITION
TO DEFENDANTS' MOTION TO DISMISS THE COMPLAINT**

BELKIN BURDEN WENIG & GOLDMAN, LLP

270 Madison Avenue
New York, New York 10016
Telephone:    (212) 867-4466
Facsimile:    (212) 867-0709

*Attorneys for Plaintiff Trump Marks Real Estate
LLC*

**Table of Contents**

Preliminary Statement ................................................................................................. 1

Statement of Facts ..................................................................................................... 2

Relevant Contract Provisions ...................................................................................... 3

Argument ..................................................................................................................... 4

I.     The Arbitration Provision in the License Agreement is expressly limited
       and narrow, and the facts and claims alleged in the Complaint plainly and
       unequivocally fall outside of its scope .................................................................. 4

       a.     The Arbitration Provision is a "narrow" arbitration provision because
              it expressly limits arbitration to two specific types of audit disputes ............ 5

       b.     Trump Marks' claims fall outside the scope of the Arbitration
              Provision ......................................................................................................... 7

       c.     Defendants rely on distinguishable cases and misapply the relevant
              law .................................................................................................................. 9

       d.     Assuming, *arguendo*, that the dollar amount due is arbitrable, which
              it is not, Trump Marks' claims against Defendants should not be
              dismissed ...................................................................................................... 10

II.    This Court has imputed consensual personal jurisdiction over the
       Individual Defendants based upon Cap Cana's consent to jurisdiction and
       Trump Marks' well pled piercing the corporate veil claim ................................... 11

III.   Trump Marks has properly pled a claim to pierce Cap Cana's corporate
       veil and hold the Individual Defendants liable for Cap Cana's obligations
       pursuant to the License Agreement .................................................................... 14

       a.     Trump Marks has sufficiently alleged that the Individual Defendants
              exercised complete dominion and control over Cap Cana with
              respect to the alleged fraudulent scheme ...................................................... 14

       b.     Trump Marks has sufficiently alleged that the Defendants used their
              domination and control of Cap Cana to commit a fraud or wrong
              that resulted in harm to Trump Marks ............................................................ 17

       c.     Trump Marks has sufficiently alleged the elements required to
              sustain a piercing the corporate veil claim under Dominican law
              based upon the elements cited by Defendants .............................................. 21

i

IV.     Trump Marks allegations are sufficient to support the appointment of a prejudgment receiver, and Defendants have failed to meet their burden on this pre-answer motion to dismiss ........................................................................ 22

Conclusion .................................................................................................................... 25

**Table of Authorities**

*Acito v. IMCERA Group*, 47 F.3d 47, 52 (2d Cir. 1995)................................................... 18

*Alghanim v. Alghanim,* 828 F.Supp. 2d 636 (S.D.N.Y. 2011) ............................ 5, 6, 9, 10

*Altissima Ltd. v. One Niagara, LLC*, No. 08-cv-756-JTC, 2009 WL 1322319 (W.D.N.Y. May 8, 2009) .............................................................................................. 24

*Citibank, N.A. v. Nyland (CF8) Ltd.*, 839 F.2d 93 (2d. Cir. 1988) ........................... 22, 24

*DirecTV Latin Am., LLC v. Park 610, LLC*, 691 F. Supp. 2d 405 (S.D.N.Y. 2010) ........ 17

*EED Holdings v. Palmer Johnson Acquisition Corp., 228 F.R.D. 508 (S.D.N.Y. 2005)*..................................................................................................................... 20, 21

*Jazini v. Nissan Motor Co.*, 148 F. 3d 181 (2d Cir. 1998)............................................... 11

*JLM Indus. v. Stolt-Nielsen S.A.*, 387 F.3d 163 (2d Cir. 2004) .................................. 9, 10

*Katz v. Feinberg*, 167 F. Supp. 2d 556 (S.D.N.Y. 2001).............................................. 5, 7

*Kinetic Instruments, Inc. v. Lares*, 802 F. Supp. 976 (S.D.N.Y. 1992).......................... 12

*Knight-McConnell v. Cummins,* 2005 U.S. Dist. LEXIS 11577, 6 (S.D.N.Y. June 10, 2005) ...................................................................................................................... 13

*Louis Dreyfus Negoce S.A. v. Blystad Shipping & Trading, Inc.*, 252 F.3d 218 (2d Cir. 2001) ................................................................................................................... 5, 10

*Marine Midland Bank, N.A. v. Miller,* 664 F.2d 899 (2d Cir. 1981) ................................ 13

*McDonnell Douglas Fin. Corp. v. Pennsylvania Power & Light Co.*, 858 F.2d 825 (2d Cir. 1988) ..................................................................................................... 5, 6, 7

*Miramax Film Corp. v. Abraham*, 2003 U.S. Dist. LEXIS 21346 (S.D.N.Y. 2003) ......... 12

*Morris v. State Dep't of Taxation & Fin.,* 82 N.Y.2d 135, 141 (1993)................. 14, 15, 17

*National Equip. Rental, Ltd. v. Szukhent*, 375 U.S. 311 (1964)..................................... 11

*Network Enters. v. Apba Offshore Prods.,* 2003 U.S. Dist. LEXIS 491 (S.D.N.Y.) ........ 17

*Ningbo Prods. Imp. & Exp. Co. v. Eliau*, 2011 U.S. Dist. LEXIS 125789 (S.D.N.Y. 2011) ............................................................................................................................. 16

*Packer v. TDI*, 959 F. Supp. 192 (S.D.N.Y. 1997)....................................... 11, 12, 13, 14

*Playboy Enters. v. Dumas*, 960 F. Supp. 710 (S.D.N.Y. 1997) ....................................... 8

*Ryan Beck & Co., Inc. v. Daly Holdings, Inc.*, No. 06-cv-5349 RCC, 2006 WL 3775964 (Dec. 19, 2006)...................................................................................... 24, 25

*Szoke v. Carter*, 165 F.R.D. 34 (S.D.N.Y. 1996) ........................................................... 22

*Tomoka Re Holdings, Inc. v. Loughlin*, 2004 U.S. Dist. LEXIS 8931 (S.D.N.Y. May 17, 2004) ................................................................................................................. 17, 20

*United States Bank Nat'l Ass'n v. Nesbitt Bellevue Prop. LLC*, 866 F. Supp. 2d 247 (S.D.N.Y. 2012) ..................................................................................................... 22

*Varsames v. Palazzolo*, 96 F. Supp. 2d 361, 365 (S.D.N.Y. 2000) ............................... 22

*Volt Info. Sci., Inc. v. Bd. of Trs. of Leland Stanford Jr. Univ.*, 489 U.S. 468 (1989)........ 6

*Wm. Passalacqua Builders v. Resnick Developers South, Inc.*, 933 F.2d 131 (2d Cir. 1991) .................................................................................................................... 15

*Weissman v. Seiyu, Ltd.*, 2000 U.S. Dist. LEXIS 509 (S.D.N.Y. 2000)......................... 11

In accordance with the stipulation dated January 3, 2013 between Plaintiff Trump Marks Real Estate LLC ("Trump Marks") and Defendants Cap Cana, S.A. ("Cap Cana"), Ricardo Hazoury, Fernando Hazoury, Abraham Hazoury, Catherine Kury Hazoury, George Spence, Michel Rodriguez, and Michell Vargas (collectively, "Individual Defendants") (together with Cap Cana, "Defendants"), which was "So Ordered" by Your Honor on January 9, 2013, Trump Marks respectfully submits this memorandum of law in opposition to Defendants' pre-answer motion to dismiss dated November 16, 2012 ("Defendants' Motion").

## PRELIMINARY STATEMENT

As declared in the Declaration of Eric F. Trump dated January 17, 2013 (the "Trump Declaration") and alleged in the Complaint dated August 23, 2012, this action arises out of a dispute under a license agreement wherein Cap Cana, the owner and operator of a world class resort in the Dominican Republic, licensed from Trump Marks the "Trump" name and trademark so that the project, which was to consist of a hotel, condominium units and various estate lots, could be known as "Trump at Cap Cana." In exchange for such license, Cap Cana agreed to pay Trump Marks various license fees, including approximately 6% of the contract sale price for each estate lot that was sold, plus a higher marginal percentage when the lots sold above a set premium. Once a purchaser paid 30% of the contract price, Trump Marks was entitled to receive a proportionate share of its license fee.

Moreover, there is no dispute among the parties as to the principal amount of license fees due to Trump Marks. There is also no dispute among the parties as to the results of any audit which may have been performed on the books and records of Cap

Cana and Defendants' counsel's attempt to characterize this dispute as an "Audit Dispute" within the scope of the limited arbitration provision is simply wrong and unsupportable. In short, uncharacteristic as it may be, the parties actually agree on the amount which is owed to Trump Marks.

What the parties do not agree on, however, is whether this this Court has jurisdiction over each of the Defendants. As an initial matter, pursuant to the terms of the license agreement, Cap Cana expressly consented to personal jurisdiction in Federal Court. As for the Individual Defendants, personal jurisdiction should be imputed based upon their blatant abuse of the corporate form to commit a fraud against Trump Marks. In this regard, it is well settled that a Court will discard the corporate form and impute a defendant corporation's consent to jurisdiction to a defendant officer, principal or shareholder when a plaintiff has pled a piercing the corporate veil claim against said individual. As further demonstrated below, Trump Marks has alleged sufficient facts to defeat a *pre-answer, pre-discovery* motion to dismiss and maintain a claim for piercing the corporate veil against the Individual Defendants. Therefore, the Court has personal jurisdiction over the Individual Defendants.

Finally, the remaining claims in Defendants' Motion are without merit and should be denied for the reasons stated herein.

## STATEMENT OF FACTS

A statement of the relevant facts is included in the Trump Declaration. For the Court's convenience, a restatement of those facts is not included herein and the Court is respectfully referred to the Trump Declaration.

<u>**RELEVANT CONTRACT PROVISIONS**</u>

Section 4(c) of the License Agreement provides, in relevant part, as follows:

> In the event there shall arise a difference or dispute between Licensor and Licensee concerning any audit conducted by Licensor under this Agreement or the amount due to Licensor hereunder (each an "Audit Dispute"), either Licensor or Licensee may submit the Audit Dispute to arbitration in accordance with the Arbitration Procedures set forth in Section 18 hereof, except that the arbitrators shall all be licensed real estate brokers, proficient in Spanish, with at least ten (10) years full-time commercial brokerage experience with the selling and development of luxury properties (comparable to the Development Components contemplated to be developed pursuant to this Agreement) in the Dominican Republic or another comparable area of the Caribbean, whichever is most relevant in such arbitrator's experience given the nature of the Audit Dispute.

(the "Arbitration Provision").(A copy of the License Agreement is annexed as Exhibit A.)[1]

Section 22 of the License Agreement provides, in relevant part, as follows:

> (a)    This Agreement shall be governed, both as to interpretation and enforcement, by the laws of the State of New York and, as necessary, in the courts in that State, without regard to any principles of conflicts of law. **<u>Any suit, action or proceeding seeking to enforce any provision of, or based on any matter arising out of or in connection with, this Agreement or the transactions contemplated hereby shall be brought in the federal court or state court located in the County of New York in the State of New York</u>**, and each of the parties hereby consents to the exclusive jurisdiction of such courts (and of the appropriate appellate courts therefrom) in any such suit, action or proceeding and irrevocably waives, to the fullest extent permitted by Law, any objection that it may now or thereafter have to the laying of the venue of any such suit, action or proceeding in any such court or that any such suit, action or proceeding brought in any such court has been brought in an inconvenient forum. Process in any such suit, action or proceeding may be served on any party anywhere in the world, whether within or without the jurisdiction of any such court. The parties acknowledge that the courts of the State of New York are a convenient forum for a resolution of any disputes hereunder. Notwithstanding the foregoing, but in action to the rights

---

[1] Any references to exhibits in this Memorandum refer to the exhibits annexed to the Trump Declaration ("Ex. __").

provided above, Licensor shall have the right, in its sole discretion, to apply for injunctive relief against Licensee in the courts of the country where the Property is located and the courts of such country shall have jurisdiction with respect thereto. Licensee and Licensor hereby:

(i)      irrevocably and unconditionally waive the right to a trial by jury in any action or proceeding or counterclaim of any type as to any matter arising directly or indirectly out of or with respect to this Agreement or any other document executed in connection herewith or therewith; and

(ii)      agree that any of them may file a copy of this Agreement with any court as written evidence of the knowing, voluntary and bargained for agreement between the parties irrevocably to waive trial by jury, and **that any dispute or controversy of any kind whatsoever between them shall be tried in a court of competent jurisdiction by a judge sitting without a jury**. [emphasis supplied]

## ARGUMENT

### POINT I:

### THE ARBITRATION PROVISION IN THE LICENSE AGREEMENT IS EXPRESSLY LIMITED AND NARROW, AND THE FACTS AND CLAIMS ALLEGED IN THE COMPLAINT PLAINLY AND UNEQUIVOCALLY FALL OUTSIDE OF ITS SCOPE

The Arbitration Provision is expressly limited and narrow in scope, and the facts alleged in the Complaint on their face fall outside the provision's scope; thus, Defendants' Motion, to the extent it seeks to dismiss the Complaint and compel arbitration, lacks merit and must be denied.

Second Circuit Courts apply a two-prong test when determining whether a dispute is arbitrable: first, the Court determines whether there is a valid agreement to arbitrate under the contract in question, and, second, if there is an agreement to arbitrate, whether the particular dispute sought to be arbitrated falls within the scope of

the arbitration agreement.  *See, e.g., McDonnell Douglas Fin. Corp. v. Pennsylvania Power & Light Co.,* 858 F.2d 825 (2d Cir. 1988).

Here, the parties do not dispute that the License Agreement contains a limited arbitration provision.  The parties do disagree, with regard to the second prong, whether facts and claims alleged in the Complaint fall within the scope of said provision.  As demonstrated below, the scope of the Arbitration Provision is narrow and limited by its express terms, and the facts and claims alleged in the Complaint on their face fall outside the scope thereof.

**A.     The Arbitration Provision is a "narrow" arbitration provision because it expressly limits arbitration to specific types of disputes**

Federal Courts treat arbitration clauses deemed to be narrow and limited very differently from arbitration provisions deemed to be broad and general.  An arbitration clause will be deemed to be narrow if the provision limits its scope to specifically articulated and defined types of disputes.  *See McDonnell Douglas,* 858 F.2d at 832. Ultimately, "making a distinction between broad and narrow arbitration clauses is necessary and sound, as the 'scope of arbitration clauses, like any contract provision, is a question of the intent of the parties.'" *Louis Dreyfus Negoce S.A. v. Blystad Shipping & Trading, Inc.*, 252 F.3d 218, 225 (2d Cir. 2001) [citations omitted].

When determining whether an arbitration provision is narrow, Courts analyze the contract language, using ordinary contract principles, to see if the parties manifested an intent to limit arbitration to specific limited types of disputes.  *Katz v. Feinberg*, 167 F. Supp. 2d 556, 566 (S.D.N.Y. 2001).  Unlike broad provisions, which may, for example, cover "[a]ny claim or controversy arising out of or relating to th[e] agreement," *Alghanim*

*v. Alghanim,* 828 F.Supp. 2d 636, 652 [internal quotation and citations omitted] (S.D.N.Y. 2011), a narrow clause expressly limits the types of disputes subject to arbitration, *see, e.g., McDonnell Douglas*, 858 F.2d at 832.

"Where an arbitration clause is broad, resulting presumption of arbitrability . . . is only overcome if it may be said with positive assurance that the arbitration clause is not susceptible of an interpretation that covers the asserted dispute." *Alghanim,* 828 F.Supp. 2d at 653 [internal quotation omitted]. It necessarily follows, then, that when an arbitration clause is narrow there is no such presumption to ensure a party is not coerced into arbitration where there was not agreement to do so. *See Volt Info. Sci., Inc. v. Bd. of Trs. of Leland Stanford Jr. Univ.*, 489 U.S. 468, 479 (1989) (stating "[a]rbitration under the [Arbitration] Act is a matter of consent, not coercion, and parties are generally free to structure their arbitration agreements as they see fit").

Here, the Arbitration Provision is contained within the subsection addressing Trump Marks' right to audit Cap Cana's books and records. The provision explicitly limits arbitration only in the event there is an "Audit Dispute." "Audit Dispute" is defined in the Arbitration Provision as "a difference or dispute between [Trump Marks] and [Cap Cana] concerning any audit conducted by [Trump Marks] under this Agreement or the amount due to [Trump Marks] hereunder (each an 'Audit Dispute')". (*See* Ex. A, p. 26, Section 4[c].) Therefore, this dispute is not arbitrable if (1) there is no difference or dispute as to any audit conducted by Trump Marks and (2) there is no difference or dispute as to any amount due to Trump Marks.

Moreover, the Court should consider two other provisions, which are not addressed in Defendants' Motion, that reflect the parties' intent to narrowly limit the

scope of arbitrable disputes. *See Katz v. Feinberg*, 167 F. Supp. 2d 556, 566 (S.D.N.Y. 2001) (stating that all terms of the parties' agreement bearing on arbitration should be analyzed, even provisions appearing elsewhere in the agreement that reflect upon the scope). In Section 18 of the License Agreement, the parties agreed that only those disputes that are "expressly" agreed to be arbitrable shall be arbitrable. (*See* Ex. A, p. 51.) In Section 22 of the License Agreement, the parties agreed to litigate all other disputes in a federal or state court located in New York. (*See* Ex. A, p. 55.)

Based upon the foregoing, the Court should find the Arbitration Provision to be narrow and limited in scope, and, thus, there should be no presumption of arbitrability beyond the stated scope agreed to by the parties in the License Agreement.

**B. Trump Marks' claims fall outside the scope of the Arbitration Provision**

Where an arbitration clause is determined to be narrow in scope, a court must then determine "whether the [question at] issue is on its face within the purview of the clause." *McDonnell Douglas,* 858 F.2d at 832. As previously stated, the purview of the Arbitration Provision at bar is limited to (1) a difference or dispute as to any audit conducted by Trump Marks or (2) a difference or dispute as to any amount due to Trump Marks.

First, here, there is not now nor was there ever a difference or dispute among the parties as to the results of any audit conducted by the parties. While Trump Marks did conduct an audit in July of 2009 (the "2009 Audit"), Defendants never disputed the results. Additionally, Defendants have had over three years to conduct their own audit and potentially produce a different amount due and owing to Trump under the License Agreement, which they did not do. Defendants did not even include, despite submitting

seven declarations in support of Defendants' Motion, a statement by any Defendant disputing the 2009 Audit results. Notwithstanding the foregoing, as alleged in the Complaint and declared in the Trump Declaration, the amount sought to be recovered is an amount the parties agree is due. The parties have moved far past the 2009 Audit, which was alleged in the Complaint to explain how Trump Marks' uncovered the truth.

Second, here, there is not now nor was there ever a difference or dispute among the parties as to the amount due (except with respect to minor interest calculations and post-contract discounts, which have long since been resolved). (*See* Compl., ¶¶6, 42, 45; *see also* Ex. G, H, O, P, Q, R, S, T.) In addition to the wholly unrebutted allegations in the Complaint, a small sample of Defendants' own words speak volumes:

- "[W]e have the same numbers" – Defendant Michel Rodriguez on March 9, 2010. (*See* Ex. O, which includes a schedule showing $10,128,431 as the exact amount due as of February 1, 2010.)

- "[W]e are obligated to clearly acknowledge our debt, which for our company is not a problem as we recognize this debt and have been making the correspondent payments with interest and late fees . . .." – Fernando Hazoury on August 11, 2010 (*See* Ex. R, which includes a schedule showing $6,847,582.41 as the exact amount due as of August 2010.)

Thus, not only is there no evidence of any dispute, Cap Cana has affirmatively acknowledged the specific amount due and repeatedly promised to pay that amount.

Since the instant action has not arisen out of an Audit Dispute, as defined in the License Agreement, this action can and should proceed in Federal Court. Moreover, the Court should not consider any belated attempt by Defendants to suddenly dispute the amounts due in Defendants' reply papers. *See Playboy Enters. v. Dumas*, 960 F. Supp. 710, 724 (S.D.N.Y. 1997) (stating "[a]rguments made for the first time in a reply brief need not be considered by a court").

**C.** **Defendants rely on distinguishable cases and misapply the relevant law**

In support of its claim that Trump Marks' claims against Cap Cana are arbitrable, Defendants rely primarily on Your Honor's decision in *Alghanim v. Alghanim*, 828 F. Supp. 2d 636 (S.D.N.Y. 2011). In *Alghanim*, there were two arbitration provisions before the Court. The first provision read as follows: "Should **any dispute** arise in the future between the two [p]arties, the final advice, opinion and decision relating thereto will be issued by [a certain arbitrator]." *Id.* at 641. [Emphasis supplied]. The second arbitration provision read as follows: "[The two parties] hereby confirm their agreement that **any dispute** arising in the future between us related to the subject of this agreement shall be finally determined by [a certain arbitrator]." *Id.* [Emphasis supplied].

The *Alghanim* Court made the determination that these two arbitration provisions were broad, and, because they were broad, there was a resulting presumption that the allegations in the complaint fell within the scope of the arbitration provision. *Id.* After analyzing the allegations in the complaint and the plaintiff's opposition papers, the Court found that plaintiff did not overcome the presumption and that the allegations in the Complaint were within the scope of the arbitration provision.

The case at bar, however, is distinguishable from *Alghanim* because the scope of the Arbitration Provision is narrow and limited, not broad, for the reasons demonstrated above. Thus, the presumption in favor of arbitration, which was present in *Alghanim*, does not apply here. Similarly, Defendants' reliance on *JLM Indus. v. Stolt-Nielsen S.A.*, 387 F.3d 163 (2d Cir. 2004) is likewise misplaced as, again, the arbitration provision in *JLM Indus.* was broadly worded: specifically, it required "**any and all differences and disputes** of whatsoever nature arising out of this Charter shall be put

to arbitration." 387 F.3d at 171-172. [Emphasis supplied.]  The *JLM Indus.* Court added that "[w]here the arbitration clause is narrow, a collateral matter will generally be ruled beyond its purview." *Id.* at 172 (quoting *Louis Dreyfus Negoce, S.A., Blystad Shipping & Trading Inc.*, 252 F.3d 218, 224 [2d Cir. 2001]).

Moreover, even where there is a presumption in favor of arbitration, as was the case in *Alghanim* and *JLM Indus.,* the Courts still analyze whether the scope of arbitration encompasses the allegations in the complaint.  Defendants, however, barely discuss the allegations in the Complaint and, when discussed, grossly mischaracterize the dispute as arising out of "purported results" of an audit for amounts that are "supposedly owed".  That is not what the allegations of the Complaint allege and that is not what this case is about.  The 2009 Audit results were unchallenged by Defendants. Defendants did not have an audit done in response.  Defendants acknowledged owing the amounts Trump Marks claimed as due.  This case is about liability and protecting Trump Marks' interest in the remaining Estate Lots.  Defendants' counsel cannot create an Audit Dispute among the parties by simply inserting the words "supposedly" and "purported" in a memorandum of law.

**D.  Assuming, *arguendo*, that the dollar amount due is arbitrable, which it is not, Trump Marks' claims against Defendants should not be dismissed**

Assuming, *arguendo*, that the exact dollar amount due is arbitrable under the License Agreement, which it is not because there is no Audit Dispute, the Complaint should not be dismissed because none of the remaining claims, especially, those seeking individual liability and a receiver are not arbitrable.  Thus, the cases cited by Defendants are distinguishable.

**THIS COURT HAS IMPUTED CONSENSUAL PERSONAL
JURISDICTION OVER THE INDIVIDUAL DEFENDANTS BASED
UPON CAP CANA'S CONSENT TO JURISDICTION AND TRUMP
MARK'S WELL PLED PIERCING THE CORPORATE VEIL CLAIM**

Defendants' Motion, to the extent it seeks to dismiss the Complaint as against the Individual Defendants due to lack of personal jurisdiction, must be denied because Cap Cana consented to the jurisdiction of this Court and Trump Marks has properly pled a claim to pierce the corporate veil against the Individual Defendants.

To defeat a defendant's motion to dismiss for lack of personal jurisdiction under Federal Rule of Civil Procedure 12(b)(6) *before* the parties have conducted any discovery, a plaintiff need only allege facts which constitute a *prima facie* showing of jurisdiction over the defendants, and the Court must construe the pleadings and affidavits in the light most favorable to the plaintiff. *Weissman v. Seiyu, Ltd.*, 2000 U.S. Dist. LEXIS 509 (S.D.N.Y. 2000); *see also Jazini v. Nissan Motor Co.*, 148 F. 3d 181, 184 (2d Cir. 1998). It is undisputed and well settled "that parties to a contract may agree in advance to submit to the jurisdiction of a given court." *National Equip. Rental, Ltd. v. Szukhent*, 375 U.S. 311, 315-16 (1964) (holding it is settled that parties to a contract may agree in advance to submit to the jurisdiction of a given court); *see also Packer v. TDI*, 959 F. Supp. 192, 196 (S.D.N.Y. 1997).

Here, Section 22(a) of the License Agreement contains a forum selection clause wherein the parties agree as follows:

> Any suit, action or proceeding seeking to enforce any provision of, or based on any matter arising out of or in connection with, this Agreement or the transactions contemplated hereby shall be brought in the federal court or state court located in the County of New York in the State of New York, and each of the parties hereby consents to the exclusive jurisdiction of such courts (and of the

> appropriate appellate courts therefrom) in any such suit, action or proceeding and irrevocably waives, to the fullest extent permitted by law, any objection that it may now or thereafter have to the laying of the venue of any such suit, action or proceeding any such court has been brought in an inconvenient for[u]m.

Thus, based upon the foregoing, Cap Cana has consented to the personal jurisdiction of this Court and, accordingly, Defendants' Motion does not dispute it. Trump Marks properly alleged in the Complaint that this Court has jurisdiction over Cap Cana pursuant to Section 22(a) of the License Agreement (*see* Compl., ¶¶8,9), which Defendants, again, have not challenged.

Cap Cana's consent to this Court's jurisdiction pursuant to the License Agreement is also the basis for this Court's personal jurisdiction over the Individual Defendants. Specifically, "[a] corporation's consent to jurisdiction under a forum selection clause can be applied to obtain jurisdiction over an individual officer by disregarding the corporate entity under the doctrine of piercing the corporate veil." *Packer v. TDI*, 959 F. Supp. 192, 202 (S.D.N.Y. 1997); *see also Kinetic Instruments, Inc. v. Lares*, 802 F. Supp. 976, 985 (S.D.N.Y. 1992) (stating "[i]t is clear that if a court has jurisdiction over a corporation, it may obtain jurisdiction over a corporate officer or shareholder by disregarding the corporate entity"). Moreover, where jurisdiction is imputed from a corporation's contractual consent to an individual defendant based upon a piercing the corporate veil claim, "any due process concerns with respect to the foreign defendants are eradicated." *Miramax Film Corp. v. Abraham*, 2003 U.S. Dist. LEXIS 21346, 26 (S.D.N.Y. 2003).

Thus, the facts alleged in the Complaint are sufficient to establish personal jurisdiction over the Individual Defendants provided that a piercing the corporate veil

claim has been pled.

For example, in *Packer v. TDI*, 959 F. Supp. 192 (S.D.N.Y. 1997), a principal of defendant corporation signed a contract containing a New York forum selection clause and a New York choice of law clause. Plaintiff pled a piercing the corporate veil claim and defendant principal moved to dismiss the complaint based upon lack of personal jurisdiction. The Court denied defendant principal's motion because "a corporation's consent to jurisdiction under a forum selection clause can be applied to obtain jurisdiction over an individual officer by disregarding the corporate entity under the doctrine of piercing the corporate veil." The Court continues, stating "New York law allows the corporate veil to be pierced either when there is fraud or whether the corporation has been used as an alter ego."

Similarly, here, Cap Cana entered into the License Agreement and consented to New York jurisdiction pursuant to the forum selection clause contained in Section 22. (*See* Ex. A.) The Court can disregard the corporate form and impute Cap Cana's consent to jurisdiction to the Individual Defendants because (and provided that) Plaintiff has properly pled a piercing the corporate veil claim against the Individual Defendants. As demonstrated in Point III below, Trump Marks' piercing the corporate veil claim has been sufficiently pled—and, therefore, imputed consensual jurisdiction against the Individual Defendants lies. *See also Knight-McConnell v. Cummins,* 2005 U.S. Dist. LEXIS 11577, 6 (S.D.N.Y. June 10, 2005) (Buchwald, J.) (stating that a pre-discovery motion to dismiss for lack of jurisdiction can be defeated by a *prima facie* showing of jurisdiction in the complaint, affidavits, and other supporting materials and the court must construe the pleadings and affidavits in plaintiff's favor); and *Marine Midland Bank,*

*N.A. v. Miller*, 664 F.2d 899 (2d Cir. 1981) (stating that without an evidentiary hearing or discovery plaintiff need only prima facie showing of piercing the corporate veil to obtain jurisdiction over the individual defendant).

**POINT III**

**TRUMP MARKS HAS PROPERLY PLED A CLAIM TO PIERCE CAP CANA'S CORPORATE VEIL AND HOLD THE INDIVIDUAL DEFENDANTS LIABLE FOR CAP CANA'S OBLIGATIONS PURSUANT TO THE LICENSE AGREEMENT**

Defendants' Motion must be denied to the extent it seeks dismissal of Trump Marks' veil piercing claim, because the Complaint sufficiently alleges a claim for piercing the corporate veil against the Individual Defendants.

As a preliminary matter, Trump Marks' corporate veil piercing claim against the Individual Defendants should be governed by New York law because, as was the case with imputed consensual personal jurisdiction, the Court should disregard the corporate form and impute Cap Cana's consent to New York law, contained in Section 22(a) of the License Agreement, to the Individual Defendants. *See, e.g., Packer v. TDI Sys.,* 959 F. Supp. 192 (S.D.N.Y. 1997).

**A.  Trump Marks has sufficiently alleged that the Individual Defendants exercised complete dominion and control over of Cap Cana with respect to the fraudulent scheme**

Under New York law, a party seeking to pierce the corporate veil, and hold an individual liable for the debts of a corporation, must satisfy a two-part test.  Part one of the test requires sufficient allegations that the corporate principals dominated the corporation with regard to the transaction attacked.  *See Morris v. State Dep't of Taxation & Fin.,* 82 N.Y.2d 135, 141 (1993).

When the ultimate decision of liability is before the trier of fact, either, for example, on a motion for summary judgment or after trial, the trier of fact is entitled to consider many factors that would tend to show whether the individuals dominated the corporation with respect to a transaction, such as, for example:

(1)     the absence of the formalities and paraphernalia that are part and parcel of the corporate existence, *i.e.*, issuance of stock, election of directors, keeping of corporate records and the like,

(2)     inadequate capitalization, and

(3)     whether funds are put in and taken out of the corporation for personal rather than corporate purposes.

*See Wm. Passalacqua Builders v. Resnick Developers South, Inc.*, 933 F.2d 131, 139 (2d Cir. 1991) (stating a list of ten factors to consider on a motion for summary judgment). These factors are not exhaustive, however: "[a]pplying these—or any other pertinent factors—to the infinite variety of situations that might warrant disregarding the corporate form is not an easy task because disregarding corporate separateness is a remedy that differs with the circumstances of each case. *Id.* [internal quotation omitted]; *see also Morris,* 82 N.Y.2d at 141 (stating "the New York cases may not be reduced to definitive rules governing the varying circumstances when the power [to pierce the corporate veil] may be exercised")

Here, the question at bar is whether the Complaint alleges sufficient facts that, if accepted as true and given all reasonable inferences in favor of Trump Marks, a trier of fact could find that the Individual Defendants dominated and controlled Cap Cana with respect to Cap Cana's (i) grossly misstated April 15, 2008 Sales Report, (ii) 13-month concealment of the $139,663,045.00 collected from Estate Lot purchasers, and (iii) squandering of funds collected and present undercapitalization. Moreover, with regard

to domination and control, the allegations in the Complaint are subject to the general pleading requirement imposed by Fed. R. Civ. P. 8(a), which requires only a short and plain statement of the claim showing that the pleader is plausibly entitled to relief. *Ningbo Prods. Imp. & Exp. Co. v. Eliau*, 2011 U.S. Dist. LEXIS 125789, 16 (S.D.N.Y. Oct. 31, 2011) (stating "allegations concerning the 'domination element' of the two-part test are subject to the basic pleading standard of Rule 8); *see also DirecTV Latin Am., LLC v. Park 610, LLC*, 691 F. Supp. 2d 405, 432 (S.D.N.Y. 2010).

As demonstrated in the Complaint, Trump Marks has sufficiently pled the first part of its corporate veil claim. Specifically, the Complaint, in summary, alleges that: (1) the Individual Defendants were the officers and principals of Cap Cana and dominated and controlled Cap Cana during the time period when the fraud was committed against Trump Marks (*see* Compl., ¶¶12-18, 53, 60); (2) the Individual Defendants had the power to withhold and did withhold the updated sales reports from Trump Marks from May 2008 through May 2009 (*see* Compl., ¶¶12-18, 53, 56); (3) the Individual Defendants had the power to and did falsify the April 2008 Sales Report (*see* Compl., ¶¶34, 35, 53, 55, 57, 58); and (4) the Individual Defendants, as a result of (1), (2), and (3) above, had the power to and did squander for personal benefit the money received from purchasers, which has rendered Cap Cana grossly undercapitalized (*see* Compl., ¶¶39, 54, 59).

Moreover, Defendants ask the Court to dismiss Trump Marks' corporate veil claim despite the fact that each of the Individual Defendants submitted declarations in support of Defendants' Motion, yet not a single one of them denied the allegations of domination and control or fraud in the Complaint.

Based upon the foregoing, the allegations in the Complaint are sufficient to meet the pleading requirements on a pre-answer, pre-discovery motion to dismiss for part one of the piercing the corporate veil test. *See Network Enters. v. Apba Offshore Prods.,* 2003 U.S. Dist. LEXIS 491 (S.D.N.Y.) (Haight, J.) (denying pre-discovery motion to dismiss piercing the corporate veil claim despite sparse allegations).

**B.**    **Trump Marks has sufficiently alleged that the Defendants used their domination and control of Cap Cana to commit a fraud or <u>wrong that resulted in harm to Trump Marks</u>**

As previously stated, under New York law, a party seeking to pierce the corporate veil and hold an individual liable for the debts of a corporation must satisfy a two-part test. Part one of the test was addressed in the subsection A above. Part two of the test requires sufficient allegations that the corporate principals used their domination to commit a fraud or wrong against the plaintiff, which resulted in plaintiff's injury. *See Morris v. State Dep't of Taxation & Fin., 82 N.Y.2d 135, 141 (1993).*

The fraud or wrong part of the piercing corporate veil claim is highly fact-specific, and there is no rigid test used to determine ultimate liability. *See Tomoka Re Holdings, Inc. v. Loughlin*, 2004 U.S. Dist. LEXIS 8931, 19 (S.D.N.Y. May 17, 2004) (Buchwald, J.) (citing *Morris*, 82 N.Y.2d at 141). Here, the question at bar is not whether Trump Marks will ultimately prevail but rather whether the Complaint alleges sufficient facts that, if accepted as true and given all reasonable inferences in favor of Trump Marks, a trier of fact could plausibly find that the Individual Defendants used there dominion and control to commit a fraud or wrong against Trump Marks, which resulted in harm to Trump Marks.

Even if the heighten pleading standard of Fed. R. Civ. P. 9(b) is applied, the Complaint alleges sufficient facts of the Individual Defendants' fraud or wrong. Under Rule 9(b), a plaintiff must allege facts that give rise to a strong inference of fraudulent intent, which may be established either (a) by alleging facts to show that defendants had both motive and opportunity to commit fraud, or (b) by alleging facts that constitute strong circumstantial evidence of conscious misbehavior or recklessness. *Acito v. IMCERA Group*, 47 F.3d 47, 52 (2d Cir. 1995). Ultimately, the purpose of Rule 9(b)'s heightened pleading standard is still only to "provide a defendant with fair notice of a plaintiff's claim." *Id.*

As demonstrated by the Complaint, Trump Marks has sufficiently pled the second part of its piercing the corporate veil claim. Specifically, the Complaint, in summary, alleges that: (1) the Individual Defendants used their domination and control of Cap Cana to withhold monthly sales reports from May 2008 until May 2009, which enabled them to conceal and misappropriate the money due to Trump Marks for their personal gain (*see* Compl., ¶¶31, 54, 58); (2) the Individual Defendants used their domination and control of Cap Cana to grossly misstate the April 2008 Sales Reports, which enable them to conceal and misappropriate the money due to Trump Marks for their personal gain (*see* Compl., ¶¶34, 35, 36, 38, 54, 55, 57); (3) the Individual Defendants used their domination and control of Cap Cana to sell estate lots at below market rates for their personal benefit (*see* Compl., ¶¶37, 54); and (4) the Individual Defendants' fraudulent actions have damaged Trump Marks as Cap Cana has been and continues to be under-capitalized and unable to pay its debts, including the millions of dollars due Trump Marks (*see* Compl., ¶¶39, 43, 46, 50).

Stated differently, the allegations provide the Who, What, Where, When, How and Why needed for Defendants to have more than fair notice of Trump Marks Claims; for example, the Complaint alleges:

- the time and date of the fraudulent misrepresentation (*i.e.,* the monthly Sales Reports issued prior to May 2008, *see* Compl., ¶¶3,30, 31,38, 55);

- the time and date of the fraudulent omissions (*i.e.,* the Individual Defendants concealed the collection of funds from Estate Lot purchasers by directing the preparation and dissemination of Sales Reports to stop from May 2008 through May 2009, *see* Compl., ¶¶31-33,56);

- the contents of the misrepresentation (*i.e.,* the May 2008 Sales Report underreported the payments received on all but 2 of the 67 Estate Lots by as much as 90% of the amount collected, *see* Compl., ¶¶34, 35, 38);

- the people making and directing the fraudulent misrepresentation (*see* Compl., ¶¶53, 55, 57);

- how the misrepresentations and omissions were fraudulent (*i.e.,* they purposefully concealed the amount of money collected by Cap Cana to enable the Individual Defendants to squander the money for their personal benefit, *see* Compl., ¶¶54, 57, 58);

- how the misrepresentations and omissions misled Trump Marks (*i.e.,* Trump Marks was purposefully deceived into believing that no License Fees were due when there unquestionably were License Fees due, *see* Compl., ¶¶57, 58); and

- what was gained from the fraud (*i.e.,* the Individual Defendants' misappropriation of money due Trump Marks and the undercapitalization of Cap Cana for the Individual Defendants' personal benefit, *see* Compl., ¶¶39, 54, 59, 60).

Additionally, as stated in the Trump Declaration, while Defendants withheld 25% of each License Fee paid to Trump Marks for taxes, Defendants, upon information and

believe, simply pocketed that 25%, never having paid any such taxes to the Dominican taxing authorities and never informing Trump Marks of Defendants' failure to pay.

Based upon the foregoing, Trump Marks' allegations give rise to a strong inference that the Individual Defendants hid and then stole the money it received from purchasers to avoid paying Trump Marks under the License Agreement. The inference of wrong or fraud is inescapable. Defendants have fair notice of Trump Marks' claims. Thus, the facts alleged in the Complaint meet or exceed the Rule 9(b) standard. *See, e.g., Tomoka Re Holdings, Inc. v. Loughlin*, 2004 U.S. Dist. LEXIS 8931, 22 (S.D.N.Y. May 17, 2004) (Buchwald, J.) (denying a motion to dismiss a piercing the corporate veil claim because complaint contained specific enough allegations, which might, if proven, support plaintiffs' veil-piercing claims). Moreover, it bears repeating that the allegations of fraud were not denied by the Individual Defendants despite the fact that they each submitted declarations in support of Defendants' Motion.

Moreover, Defendants' reliance on *EED Holdings v. Palmer Johnson Acquisition Corp.,* 228 F.R.D. 508 (S.D.N.Y. 2005) is misapplied. In *EED Holdings*, the complaint made only two relevant allegations: (1) in order to entice plaintiff to enter in to a contract with a subsidiary, defendant parent corporation executed a parent guaranty document and (2) parent's principal's domination of and under-capitalization of parent had caused a wrong to be committed against plaintiff, which had relied upon the parent guaranty, and had caused injury to plaintiff as, upon information and belief, parent was unable to comply with its obligations under the parent guaranty. *Id.* at 512. There were no other relevant allegations in the complaint, and the *EED Holdings* Court found these two allegations to be conclusory.

Here, however, as demonstrated above, the Complaint contains numerous factual allegations that are far more detailed and far more specific than the mere two conclusory allegations contained in *EED Holdings.*

**C.      Trump Marks has sufficiently alleged the elements required to sustain a corporate veil claim under Dominican law based upon the elements cited by Defendants**

Even assuming, *arguendo*, that Dominican law governs Trump Marks piercing the corporate veil claim, which it does not, Trump Marks sufficiently alleges the purported elements of piercing the corporate veil under Dominican law.

Defendants' Memorandum claims that, under Dominican law, "a plaintiff seeking to piece the corporate veil must show that: (i) the defendant used the corporate entity to accomplish an unlawful purpose; (ii) the defendant intended to use the corporate entity to accomplish an unlawful purpose; and (iii) the failure to pierce the corporate veil will subject the plaintiff to an injustice." (*See* Def.'s Memo, p. 23 [citing Chupani Aff.].)  The Complaint sufficiently alleges each of these three elements, which are substantially similar to the allegations needed under New York law.  Thus, as demonstrated above, the Complaint sufficiently alleges the purported three Dominican veil piercing elements.

Moreover, Defendants' reliance on the Chupani Affidavit for its argument that Trump Marks' allegations "are insufficient to make it the first private party to succeed" is completely misplaced.  Dr. Chupani does not opine in paragraph 26, nor in any other paragraph of his affidavit, as to the sufficiency of the Complaint.  Dr. Chupani is referring only to whether ultimate relief has ever been granted on a piercing the corporate veil claim—not whether a claim should survive a pre-answer, pre-discovery

motion to dismiss.  Thus, Defendants' citation to paragraph 26 of the Chupani Affidavit is misleading and misplaced.

**POINT IV**

**TRUMP MARK'S ALLEGATIONS ARE SUFFICIENT TO SUPPORT THE APPOINTMENT OF A PREJUDGMENT RECEIVER, AND DEFENDANTS HAVE FAILED TO MEET THEIR BURDEN ON THIS PRE-ANSWER MOTION TO DISMISS**

Trump Marks has sufficiently pled a claim for a temporary receiver.  It is well settled law that a complaint must only be dismissed under Rule 12(b)(6) if it appears beyond a reasonable doubt that the plaintiff can prove no set of facts in support of his or her claim that would plausibly entitle him or her to relief.  Additionally, in deciding a Rule 12(b)(6) motion, the Court must read the facts alleged in the complaint liberally and draw all reasonable inferences in favor of the party opposing the motion.  *See, e.g., Szoke v. Carter*, 165 F.R.D. 34, 36-37 (S.D.N.Y. 1996).

To warrant the appointment of a receiver, a plaintiff needs to show that the appointment is necessary to protect the plaintiff's interests in the defendant's property.  *Citibank, N.A. v. Nyland (CF8) Ltd.*, 839 F.2d 93, 98 (2d. Cir. 1988).  Federal Courts evaluate a number of factors when determining whether the appointment of a receiver is necessary, and consider, for example, whether there has been "[f]raudulent conduct on the part of [the] defendant; the imminent danger of the property being lost, concealed, injured, diminished in value, or squandered; and the inadequacy of the available legal remedies."  *United States Bank Nat'l Ass'n v. Nesbitt Bellevue Prop. LLC*, 866 F. Supp. 2d 247, 249-250 (S.D.N.Y. 2012).  Notably, one of the primary factors evaluated is "the probability that [the] harm to [the] plaintiff by denial of the appointment would be greater than the injury to the parties opposing appointment."  *Id.; see also Varsames v. Palazzolo*, 96 F. Supp. 2d 361, 365 (S.D.N.Y. 2000).

Here, the Court can easily infer from the ample facts alleged in the Complaint that the factors considered for the appointment of a receiver are present. Specifically, the wholly unrebutted allegations in the Complaint include that (a) Defendants fraudulently underreported the amount of money received from purchasers prior to April 2008, (b) Defendants fraudulently concealed the amount of money it received prior to May 2009, (c) Defendants engaged in selling Estate Lots for below market prices, (d) Defendants squandered the funds that Cap Cana did receive for their personal benefit, (e) Defendants fraudulently rendered Cap Cana inadequately capitalized and (f) any further liquidation, waste, misappropriation or theft of Cap Cana's remaining assets would cause an immediate and irreparable harm to Trump Marks. (*See* Compl., ¶¶34-37, 83-87.)

Most troubling is Cap Cana's continued control over the 11 remaining unsold Estate Lots and Cap Cana's continued collection of deposits under existing contracts. With regard to the 11 unsold Estate Lots, the Individual Defendants retain the unchecked ability to (a) squander the proceeds of any sale or (b) sell the Estate Lots for below market value in exchange for forgiveness, which, upon information and belief, they have already attempted to do.

Thus, the court-ordered appointment of a receiver is necessary in this case to (1) ensure that Defendants do not improperly dispose of any of Cap Cana's remaining assets; (2) guarantee that if Defendants do liquidate any assets that those assets are sold for a fair market value; (3) collect, account for, and manage any funds received from the sale of any of Cap Cana's assets; (4) monitor and prevent further waste and fraud and (5) report to this Court and to Plaintiff.

Given the magnitude of Defendants' undisputed $6,762,696.50 outstanding debt, Defendants' repeated and admitted inability and/or refusal to pay the full amount of the debt due and owing since 2008, and Defendants' prior acts of corporate dishonesty, the appointment of a prejudgment and court-ordered receiver is the only way to protect Trump Marks' from irreparable harm. The appointment of a receiver will not harm or prejudice Cap Cana, nor does Defendants' Motion claim any prejudice. Importantly, Defendants will suffer no harm or prejudice if a receiver is appointed because the receiver's duties and scope of authority will be entirely governed by court order. *See Citibank*, 839 F.2d at 98.

Lastly, Defendants' reliance on *Altissima Ltd. v. One Niagara, LLC*, No. 08-cv-756-JTC, 2009 U.S. Dist. LEXIS 39472 (W.D.N.Y. May 8, 2009) and *Ryan Beck & Co., Inc. v. Daly Holdings, Inc.*, No. 06-cv-5349 RCC, 2006 WL 3775964 (Dec. 19, 2006) is misplaced. Procedurally, both *Altissima* and *Ryan Beck & Co., Inc* determined the merits of a plaintiff's motion to have a temporary receiver appointed, which is decidedly not the motion before this Court. Defendants' Motion is simply a pre-answer, pre-discovery motions to dismiss. Notwithstanding the vastly different procedural postures of the cases cited by Defendants, the underlying merits of each case cited by Defendants are substantially distinguishable from the case at bar.

In *Altissima*, the Court found that the plaintiff failed to prove that a receiver was necessary to prevent irreparable injury, and failed to come forward with clear proof of fraud on the part of the defendant or its manager. *Altissima,* 2009 U.S. Dist. LEXIS 39472, *4-5 (W.D.N.Y. May 8, 2009), *supra*. Here, however, Trump Marks has sufficiently alleged facts supporting its claim that Trump Marks will be irreparably

harmed if the Individual Defendants are permitted to maintain control and manage the Estate Lots. (*See* Compl., ¶¶83-86; *see also* Trump Dec., ¶¶ 48-50.) In fact, despite the fact that the Complaint is replete with allegations of a large scale fraud, theft and waste—not a single Defendant submitted a denial.

Similarly, in *Ryan Beck & Co.,* the Court found that the plaintiff failed to make a sufficient showing of (i) a need to protect the plaintiff's interests, (ii) a threat of dissipation of defendants' assets, or (iii) any facts to support its allegation that defendant is in danger of becoming insolvent. *Ryan Beck*, 2006 U.S. Dist. LEXIS 92001, 5-6. Here, however, Trump Marks has alleged facts sufficient to support (i) the need to protect its interest from the Individual Defendants, who have worked a fraud against and squandered money due Trump Marks, (ii) the need to protect the 11 remaining unsold Estate Lots from further waste and dissipation, and (iii) the fact that Cap Cana is in fact insolvent. (*See* Compl., ¶¶83-86; *see also* Trump Dec., ¶¶ 48-50.)

## CONCLUSION

For the foregoing reasons, this Court should deny Defendants' Motion in its entirety.

Dated: New York, New York
January 17, 2013

Respectfully submitted,
BELKIN BURDEN WENIG & GOLDMAN, LLP

By: _____
Jeffrey L. Goldman (jgoldman@bbwg.com)

270 Madison Avenue
New York, New York 10016
Telephone: (212) 867-4466
Facsimile: (212) 297-1859

25